UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KENAN BRAXTON, et al.<br><br>      *Plaintiffs-Petitioners,*<br><br>      v.<br><br>UNITED STATES PAROLE<br>COMMISSION, et al.<br><br>      *Defendants-Respondents*. | Case No. 25-cv-3534 |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

This case challenges the United States Parole Commission's ("Parole Commission" or "Commission") ongoing functioning while it lacks authorization and has been abolished by Congress, effective midnight on October 1, 2025.  Plaintiffs seek an order certifying the following class pursuant to Federal Rule of Civil Procedure 23(b)(2): all people financially unable to obtain adequate representation who are on supervised release or parole for D.C. Code offenses and who are or will be detained solely by the Parole Commission and are pending action by the Parole Commission at midnight on October 1, 2025, or later.

The proposed class readily satisfies the requirements of numerosity, commonality, typicality, and adequacy in Rule 23(a).  The proposed class is sufficiently numerous such that joinder of class members is impracticable.  Dozens of people comprise the proposed class.  Joinder is impractical in light of the nature of the proposed class, which includes people who are and will be incarcerated in the D.C. Jail, and who lack the resources to file a civil suit.  The class raises common legal questions that will generate common answers, namely whether the Parole Commission can continue to carry out its functions after Congress has unequivocally abolished it.

Plaintiffs' claims for declaratory and injunctive relief are typical of the proposed class.  And Plaintiffs and the proposed class will be adequately represented by experienced attorneys from the Public Defender Service for the District of Columbia, who have expertise in both class action litigation and in the policies and procedures of the United States Parole Commission.

The proposed class likewise satisfies Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The Parole Commission's enabling statute expired on September 30, 2025, yet the Commission has decided to "proceed with normal operations," including "[a]ll scheduled local revocation hearings and probable cause hearings," ECF No. 3-2.

In sum, this case is a textbook Rule 23(b)(2) class action.  All proposed class members are subject to the same unauthorized authority and seek the same relief.  Certifying the class will "generate common answers apt to drive the resolution of this litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation marks omitted).  Accordingly, this Court should grant class certification under Rule 23(b)(2), appoint named Plaintiffs Kenan Braxton, Michael Dunbar and Stanley Petty as Class Representatives, and appoint undersigned counsel as Class Counsel, Fed. R. Civ. P. 23(a), (g).

## BACKGROUND

*Parole and Supervised Release in Washington, D.C.*

Until midnight on October 1, 2025, people on parole or supervised release for D.C. Code offenses in the District of Columbia have been subject to the authority of a federal agency: The United States Parole Commission.  This federal agency was initially established to supervise individuals on parole in the federal system.  Today the Commission's involvement in federal cases

has been almost entirely replaced by federal court supervision since the adoption of the federal determinate sentencing system in 1984.  In 1997, the Commission assumed the responsibilities of the D.C. Board of Parole, taking jurisdiction over those on parole or supervised release for D.C. Code offenses.

In this role, the Commission has been responsible for the administration of parole and supervised release in D.C. for decades.  The Commission decides, for example, which general and special conditions of supervision are imposed on individuals released on parole or supervised release.  The Commission issues warrants for the arrest of those on supervision whom it believes have violated their conditions of release.  Unlike criminal proceedings, these arrests of people on supervision are not always the result of criminal conduct.  Instead, they are frequently the result of administrative violations of conditions of release—known as "technical violations"—which may include missing an appointment with a supervision officer or failing to attend a required program.

Those arrested on a Commission warrant who face local revocation hearings generally do not include those who have been detained by a judge or found guilty of criminal conduct.  Rather, if someone is facing criminal charges (as opposed to solely alleged technical violations), a Commission warrant is only executed if and when the court releases the individual.  At the conclusion of these hearings, the Commission may revoke the individual's term of supervision and impose a term of incarceration.  *See* 28 C.F.R. §§ 2.103, 2.216.  When someone's supervision is revoked, even as a result of technical violations, lengthy periods of incarceration can ensue.

*Abolition of the Parole Commission*

Congress provided for the abolition of the Parole Commission over forty years ago.  In 1984, the Comprehensive Crime Control Act abolished the "outmoded" model of "coercive" rehabilitation, where an individual would have to prove that they were "rehabilitated" to be

released from prison on parole.  S. Rep. No. 98-225, at 38, 40 (1983).  As the Senate Judiciary Committee explained, such a model is outdated because it "was based on the vices of the indeterminate sentence regime of prior law, under which the effective time of incarceration was determined, not by the sentencing judge, but by the Parole Commission endeavoring to decide when the prisoner had been 'rehabilitated.'"  *United States v. Maier*, 975 F.2d 944, 947 n.1 (2d Cir. 1992) (referencing S. Rep. No. 98-225).  Congress thus abolished the federal parole system and the Commission on November 1, 1992.  The abolition of parole in the District followed soon after its abolition in the federal system, when Congress "borrowed and incorporated" the federal supervised release system into the D.C. Code.  *See* Advisory Comm'n on Sentencing, *Report of the District of Columbia Advisory Commission on Sentencing* 19 (2005).

Following Congress's decision to abolish the Commission over four decades ago, it has continued to exist only through extensions of its expiration date.  Prior to the initial repeal date on November 1, 1992, for example, Congress extended the date until 1997.  In 1996, Congress added five additional years to this phase-out period in order "to oversee cases of prisoners sentenced under prior law."  Parole Commission Phaseout Act of 1996, Pub. L. No. 104-232, § 2, 110 Stat. 3055, 3055 (1996).  In that law, Congress also "reduce[d] the size of the Parole Commission."  *Id.*

Over time, and in light of the abolition of parole, the population of people on parole and people serving parole-able sentences has decreased.  And as parole has been phased out, Congress's extensions to the Commission's phase-out date have shortened.  Since 2022, Congress has extended this date nearly a dozen times, most often by a matter of months.  On September 30, 2025, for the first time, Congress did not extend the date of repeal of the Parole Commission.  As a result, the "transition period" has concluded, and the "expiration of the phaseout period and the complete dissolution of the Parole Commission" has taken effect.  *Walden v. U.S Parole Comm'n*,

114 F.3d 1136, 1139 (11th Cir. 1997).

Despite the obvious expiration of Congressional authorization at midnight on October 1, 2025, the Commission has continued to proceed with its normal operations: issuing warrants, detaining, revoking, and subjecting individuals to further terms of incarceration. The Commission's actions are thus unlawfully depriving Plaintiffs of their liberty. Plaintiffs Kenan Braxton, Stanley Petty, and Michael Dunbar—who each were arrested and detained by the now-defunct Parole Commission—remain at the D.C. Jail under the *sole* authority of a federal agency that no longer legally exists.

## ARGUMENT

A plaintiff whose suit meets the requirements of Federal Rule of Civil Procedure 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). To meet these requirements, the "suit must satisfy the criteria set forth in [Rule 23(a)] (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Id.* Plaintiffs' proposed class satisfies all four of these prerequisites, as well as the requirements for certification under Rule 23(b)(2).

### I.    The Proposed Class Satisfies the Four Rule 23(a) Requirements.

#### a.    Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Demonstrating impracticability of joinder does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *D.L. v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013) (citation omitted), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017).

"There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination requires examination of the specific facts of each case and imposes no absolute limitations." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007) (internal quotation marks omitted); *see also Thorpe v. District of Columbia*, 303 F.R.D. 120, 144 (D.D.C. 2014) ("There is no specified or minimum number of plaintiffs needed to maintain a class action." (citation omitted)).  Nevertheless, some courts in this district have found that a class is presumptively numerous enough to satisfy Rule 23(a)(1) if it includes forty or more members. *See Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 206 (D.D.C. 2018).  In any case, a "plaintiff need not provide the exact number of potential class members to satisfy the requirement, so long as there is a reasonable basis for the estimate provided." *Lightfoot v. District of Columbia*, 246 F.R.D. 326, 335 (D.D.C. 2007).

The proposed class easily meets this requirement.  Natalie Epps, Deputy Chief of the Parole Division at the Public Defender Service, estimates that about 70 people are currently being detained at the D.C. Jail pending action by the Parole Commission.  Ex. A, Epps Decl. at ¶ 4. These individuals—people who are held at the D.C. Jail pursuant to United States Parole Commission action and who are detained pending further unlawful action by an Agency that has expired—are members of the class.  The class thus exceeds forty members and is thus entitled to a presumption of sufficient numerosity.  *See Garnett*, 301 F. Supp. 3d at 206.

Additional factors commonly considered by courts when evaluating numerosity also compel the conclusion that class treatment is appropriate.  The proposed class is entirely comprised of indigent persons who are represented by the Public Defender Service for D.C. in their revocation proceedings and who cannot afford to bring individual actions.  Ex. A, Epps Decl. at ¶ 3. *See also Colo. Cross-Disability Coal. v. Taco Bell Corp.*, 184 F.R.D. 354, 359 (D. Colo. 1999) (finding

6

joinder impracticable where many class members could not afford to bring individual actions); *Jackson v. Foley*, 156 F.R.D. 538, 542 (E.D.N.Y. 1994) (finding joinder impracticable where the majority of class members came from low-income households, greatly decreasing their ability to bring individual lawsuits).  Class members are also incarcerated in the D.C. Jail, and therefore lack the means to commence individual lawsuits, factors that also demonstrate the impracticability of joining individual suits.  *See D.L.*, 302 F.R.D. at 11 (certifying a class of a school district's "youngest and most vulnerable pupils, many of whom are indigent and unable to obtain legal services").

Finally, joinder is impracticable here because the class will expand to include unknown future class members.  The Parole Commission has indicated that, despite its repeal by Congress, it intends to "proceed with normal operations," which would include issuing arrest warrants for people on supervised release and parole in D.C.  ECF No. 3-2.  These individuals—people arrested pursuant to a warrant issued by an Agency that has expired—would be class members.  Because "the class seeks prospective relief for future class members, whose identities are currently unknown and who are therefore impossible to join," the Court should find "the numerosity requirement of Rule 23(a)(1) satisfied."  *D.L.*, 302 F.R.D. at 11; *see also, e.g.*, *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (quoting *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000) ("[T]he fact that the class includes unknown, unnamed future members also weighs in favor of certification.")).  As the District Court explained in *D.L.*, "future members make joinder inherently impracticable because there is no way to know who they will be." 302 F.R.D. at 11; *see also Olson v. Brown*, 284 F.R.D. 398, 408 (N.D. Ind. 2012) (same).  Given the size of the proposed class now, the characteristics of

the proposed class members, and the unknown identities of future class members, joinder of the proposed class is inherently impracticable.

### b. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  At bottom, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Wal-Mart Stores, Inc.*, 564 U.S. at 349–50 (internal quotation marks omitted).  This requirement is met if "a single aspect or feature of the claim is common to all proposed class members," *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003), and "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke," *Wal-Mart Stores*, 564 U.S. at 350.

Here, "proposed class members allege common harm stemming from a common source"— being subjected to unauthorized agency action by the abolished United State Parole Commission. *See Davis v. United States Parole Comm'n*, No. 1:24-CV-01312 (TNM), 2025 WL 457779, at *4 (D.D.C. Feb. 11, 2025).  The Parole Commission continuing to take action while they have no Congressional authorization affects all class members regardless of the specific individual circumstances in each case.  Plaintiffs' claims raise common legal questions, namely whether the Parole Commission can continue to carry out its functions after Congress has unequivocally abolished it.  The answer to this question will "drive the resolution of the litigation."  *Wal-Mart Stores*, 564 U.S. at 350 (citation omitted).

Answering this common question is sufficient to satisfy Rule 23(a)(2)'s permissive standard.  "[F]actual variations among the class members," such as the specific allegations in each case, are not a barrier to meeting this requirement so long as a single aspect or feature of the claim is common to all proposed class members.  *See Bynum*, 214 F.R.D. at 33.  "Even a single common

question will do" to support a commonality finding. *Wal-Mart Stores*, 564 U.S. at 359 (brackets and internal quotation marks omitted); *see also Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 357 (D.D.C. 2007) ("The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.").

### c. Typicality

Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members. The typicality requirement "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores*, 564 U.S. at 349. "A class representative satisfies the typicality requirement if the representative's claims are based on the same legal theory as the claims of the other class members and her injuries arise from the same course of conduct that gives rise to the other class members' claims." *Coleman v. District of Columbia*, 306 F.R.D. 68, 83 (D.D.C. 2015) (internal quotation marks omitted). Under the rule's permissive standards, "[f]actual variations between the claims of class representatives and the claims of other class members . . . do not negate typicality." *Bynum*, 214 F.R.D. at 34. "Rather, if the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims." *Id.* at 35. The typicality requirement is met here, where the named Plaintiffs' "claims are based on the same legal theory as the claims of the other class members." *See id.*

Here, the putative class members all share the same claim as the proposed class representatives: that the Parole Commission is not lawfully authorized to operate, and thus cannot subject them to continued detention or any other action. Each putative class member is on parole

or supervised release and has been or will be alleged to have violated conditions subject to the authority of the Parole Commission. Their injuries arise from the same unlawful course of conduct: the Commission taking action (regardless of the type of action) after midnight on October 1, 2025 without any valid authorization. Because the underlying facts and legal claims concerning the named Plaintiffs are typical of the proposed class, the typicality requirement is easily met here.

### d. Adequacy

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement ensures that "the named representative must not have antagonistic or conflicting interests with the unnamed members of the class," and "the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (citation omitted). Both requirements are met here.

The named Plaintiffs will fairly and adequately protect the interests of the proposed class. Plaintiffs do not seek any unique or additional benefit from this litigation that may make their interests different from or adverse to those of absent class members. Instead, Plaintiffs' aim is to secure release of all individuals being detained pursuant to the Parole Commission's authority, which expired as of October 1, 2025, and to seek relief that will ensure all class members are not being subject to unauthorized actions by an abolished agency. Nor do Plaintiffs or Class Counsel seek financial gain at the cost of absent class members' rights. Indeed, this Rule 23(b)(2) class action seeks only injunctive and declaratory, but not monetary, relief. Accordingly, Plaintiffs lack any antagonism with the class, and their interests align squarely with the other proposed class members in obtaining injunctive and declaratory relief.

10

Moreover, Plaintiffs' counsel will "vigorously prosecute the interests of the class" and should be designated as class counsel under Fed. R. Civ. P. 23(g). *Twelve John Does*, 117 F.3d at 575 (citation omitted). Plaintiffs' counsel is not seeking attorneys' fees and has no interests adverse to putative class members in this litigation. Plaintiffs' counsel also has extensive experience with the factual and legal issues litigated in this case. *See* Ex. B, Declaration of Zoé Friedland. Likewise, the Public Defender Service has a significant and lengthy history of affirmative civil rights class litigation, including serving as lead counsel in cases challenging the United States Parole Commission. *See* Ex. B, Friedland Decl. ¶¶ 4, 7; *see, e.g.*, *Mathis v. United States Parole Commission*, No. 24-cv-01312 (D.D.C.) (lead counsel in certified class action against United States Parole Commission); *Hagans v. United States Parole Commission*, No. 25-cv-01671 (D.D.C.) (lead counsel in class action against United States Parole Commission); *Lewis v. United States Parole Commission*, No. 22-cv-2182 (D.D.C.) (same); *Love v. Bureau of Prisons*, No. 24-cv-2571 (lead counsel in class action against Bureau of Prisons); *Banks v. Booth*, No. 20-cv-849 (D.D.C.) (lead counsel in class action against District of Columbia jail); *Hinton v. District of Columbia*, No. 21-cv-01295 (JDB) (D.D.C.) (same); *K.Y. v. District of Columbia*, No. 24-cv-03056 (D.D.C.) (lead counsel in class action against the District of Columbia Department of Youth Rehabilitation Services); *Davis v. United States Parole Commission*, No. 20-cv-2897 (D.D.C.) (lead counsel in suit against United States Parole Commission).

## II.    The Proposed Class Satisfies the Requirements of Rule 23(b)(2).

In addition to satisfying the four requirements of Rule 23(a), Plaintiffs also must meet one of the requirements of Rule 23(b) for a class action to be certified. Courts in this District have interpreted Rule 23(b)(2) to impose two requirements: "(1) that defendant's actions or refusal to act are 'generally applicable to the class' and (2) that plaintiffs seek final injunctive relief or

11

corresponding declaratory relief on behalf of the class." *Bynum*, 214 F.R.D. at 37; *Disability Rights Water Council of Greater Wash. v. Washington Metro. Area Transit Auth.*, 239 F.R.D. 9, 28 (D.D.C. 2006). To satisfy Rule 23(b)(2), "it is enough to show that a defendant has acted in a consistent manner toward members of the class so that his actions may be viewed as part of a pattern of activity." *Bynum*, 214 F.R.D. at 37 (internal citation omitted). As the D.C. Circuit has recognized, "Rule 23(b)(2) was intended for civil rights cases." *In re D.C.*, 792 F.3d 96, 102 (D.C. Cir. 2015).

"The key to the (b)(2) class," the Supreme Court has explained, "is the indivisible nature of the injunctive or declaratory remedy warranted." *Wal-Mart Stores*, 564 U.S. at 360. Where "a single injunction or declaratory judgment would provide relief to each member of the class," the class may be certified under (b)(2). *Id.* For this reason, civil rights class actions such as this one are the paradigmatic Rule 23(b)(2) suits, as "they seek classwide structural relief that would clearly redound equally to the benefit of each class member." *Marcera v. Chinlund*, 595 F.2d 1231, 1240 (2d Cir. 1979), *vacated on other grounds sub nom. Lombard v. Marcera*, 442 U.S. 915 (1979); *see also Johnson v. Gen. Motors Corp.*, 598 F.2d 432, 435 (5th Cir. 1979); *Elliot v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977) (explaining that an action to enjoin allegedly unlawful government conduct is "the classic type of action envisioned by the drafters of Rule 23 to be brought under subdivision (b)(2)"), *aff'd in pertinent part sub nom. Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).

Specifically, this case challenges the Parole Commission's continued operation despite the expiration of its statutory authority. And the Complaint seeks injunctive relief that would enjoin the Commission from issuing arrest warrants, detaining, revoking, and imposing further terms of incarceration after that expiration at midnight on October 1, 2025. The requested injunctive relief

would "provide relief to each member of the class." *Wal-Mart Stores*, 564 U.S. at 360. Thus, "certification of a (b)(2) class in this case is appropriate because the [Commission's] conduct is 'such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *D.L.*, 302 F.R.D. at 16 (quoting *Wal-Mart Stores*, 564 U.S. at 360).

Certification of the class is also appropriate because the injunctive and declaratory relief it seeks is also necessary to avoid mootness and facilitate enforcement of judgments. *See* William B. Rubinstein, 1 Newberg on Class Actions § 2:13 (5th Ed. 2013). Given the likelihood that the named Plaintiffs will eventually be released from custody, and that the Commission can, and will, moot individual actions, absent certification, enforcing any judgment entered by the Court will be difficult. Moreover, future class members are entitled to the same rights and just treatment as the named Plaintiffs. Thus, class-wide relief is appropriate to avoid mootness and to facilitate enforcement of any judgment this Court may enter.

## CONCLUSION

Plaintiffs respectfully request that the Court grant this Motion and enter an order certifying the proposed class under Rule 23(b)(2); appointing Plaintiffs Kenan Braxton, Michael Dunbar and Stanley Petty as Class Representatives; and appointing undersigned counsel from the Public Defender Service as Class Counsel.


Dated: October 2, 2025                    Respectfully Submitted,

                                          */s/* Zoé Friedland
                                          Zoé Friedland (D.C. Bar No. 1781910)
                                          Hanna Perry (D.C. Bar No. 90003756)
                                          Teressa Hamsher (D.C. Bar No. 90009447)
                                          Megan Yan (D.C. Bar No. 1735334)
                                          Public Defender Service for the
                                          District of Columbia

13

633 3rd St. N.W.
Washington, D.C. 20001
Tel. 202-824-2198
Fax 202-824-2093
zfriedland@pdsdc.org
hperry@pdsdc.org
thamsher@pdsdc.org
myan@pdsdc.org
*Counsel for Plaintiffs*