UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KENAN BRAXTON, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 25-3534 (ACR) |
| UNITED STATES PAROLE COMMISSION, *et al.*, | |
| *Defendants*. | |

**FEDERAL DEFENDANTS' OPPOSITION TO MOTION FOR
<u>TEMPORARY RESTRAINING ORDER</u>**

# TABLE OF CONTENTS

Table of Contents ............................................................................................................... i

Table of Authorities .......................................................................................................... ii

Background ......................................................................................................................... 1

Legal Standards .................................................................................................................. 3

Argument ............................................................................................................................ 4

      I.      Most of Petitioners' Causes of Action Fail at the Threshold. ............................... 5

            A.      Habeas Corpus. ....................................................................................... 5

            B.      Administrative Procedure Act .................................................................. 6

            C.      *Ultra Vires.* .............................................................................................. 7

      II.     Petitioners Are Unlikely to Succeed on the Merits of Their Claims Because the Commission Retains Authority At Least as to D.C. Code Offenders. .................... 8

      III.   Petitioners' Requested Remedies Are Improper, and Any Remedies Are Limited. ....................................................................................................................... 11

      IV.   Petitioners Cannot Establish Irreparable Harm ..................................................... 14

      V.    The Balance of the Equities and the Public Interest Favor Defendants. ............... 15

Conclusion ....................................................................................................................... 18

# TABLE OF AUTHORITIES

<u>Cases</u>

*Abdullah v. Obama,*
    753 F.3d 193 (D.C. Cir. 2014) ........................................................................... 4

*Ass'n of Flight Attendants-CWA v. Chao,*
    493 F.3d 155 (D.C. Cir. 2007) ........................................................................ 6, 7

*Banks v. Smith,*
    377 F. Supp. 2d 92 (D.D.C. 2005) ...................................................................... 6

*Benisek v. Lamone,*
    138 S. Ct. 1942 (2018) ....................................................................................... 4

*Bennett v. Spear,*
    520 U.S. 154–78 (1997) ................................................................................. 6-7

*Chaplaincy of Full Gospel Churches,*
    454 F.3d ..................................................................................................... 14, 15

*Dorfmann v. Boozer,*
    414 F.2d 1168 (D.C. Cir. 1969) .......................................................................... 4

*Dorsey v. United States,*
    567 U.S. 260 (2012) ......................................................................................... 10

*Gant v. Reilly,*
    224 F. Supp. 2d 26 (D.D.C. 2002) ...................................................................... 6

*Glob. Health Council v. Trump,*
    No. 25-5097, 2025 WL 2480618 (D.C. Cir. Aug. 28, 2025) ............................. 8, 9

*Goldsmith v. Garrett,*
    No. 24-1234, 2024 WL 3833300 (7th Cir. Aug. 15, 2024) ................................... 5

*Gonzalez v. Crosby,*
    545 U.S. 524 ...................................................................................................... 5

*Heck v. Humphrey,*
    512 U.S. 477 (1994) ........................................................................................... 5

*Jackson v. Scalia,*
    780 F. Supp. 2d 81 (D.D.C. 2011) .................................................................... 14

*Jenkins v. United States,*
    Civ. A. No. 14-0660 (CRC), 2014 WL 5784084 (D.D.C. Nov. 5, 2014) .............. 7

*Jennings v. Rodriguez,*
    583 U.S. 281 (2018) ........................................................................................... 5

*Lofton v. District of Columbia*,
  7 F. Supp. 3d 117 (D.D.C. 2013) ................................................................ 3

*Madley v. U.S. Parole Comm'n*,
  278 F.3d 1306 (D.C. Cir. 2002) .............................................................. 6

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) (per curiam) ........................................................... 4

*Nader v. Saxbe*,
  497 F.2d 676 (D.C. Cir. 1974) ............................................................. 11

*Nance v. Ward*,
  597 U.S. 159 (2022) .......................................................................... 5

*Nken v. Holder*,
  556 U.S. 418 (2009) ..................................................................... 4, 15

*Nuclear Regul. Comm'n v. Texas*,
  605 U.S. 665 (2025) ........................................................................ 8

*Preiser v. Rodriguez*,
  411 U.S. 475 (1973) ........................................................................ 5

*In re Grand Jury Proc.*,
  810 F.2d 580 (6th Cir. 1987) ............................................................ 16

*Rahim v. U.S. Parole Comm'n*,
  77 F. Supp. 3d 140 (D.D.C. 2015) ...................................................... 13

*Ramsey v. U.S. Parole Comm'n*,
  82 F. Supp. 3d 293 (D.D.C. 2015) ....................................................... 7

*Rumsfeld v. Padilla*,
  542 U.S. 426–35 (2004) .................................................................... 6

*Ryder v. United States*,
  515 U.S. 177–81 (1995) .................................................................. 12

*Scottsdale Capital Advisors Corp. v. Fin. Indus. Regul. Auth., Inc.*,
  678 F. Supp. 3d 88 (D.D.C. 2023) ....................................................... 4

*Trump v. J.G.G.*,
  604 U.S. 670 (2025) ........................................................................ 6

*United States v. Johnson*,
  2025 WL 2538837 (D.D.C. Sept. 4, 2025) ............................................ 13

*Walden v. U.S. Parole Comm'n*,
  114 F.3d 1136 (11th Cir. 1997) .................................................. 11-12, 13

*Wallace v. Fed. Bureau of Prisons,*
   604 F. App'x 329 (4th Cir. 2015) ........................................................ 7

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) .............................................................................. 4


<u>Statutes</u>

1 U.S.C. § 109 ........................................................................................ 10

5 U.S.C. § 551 ......................................................................................... 6

5 U.S.C. § 704 ......................................................................................... 6

5 U.S.C. § 706 ......................................................................................... 3

28 U.S.C. § 2241 .................................................................................. 3, 4

28 U.S.C. § 2254 ..................................................................................... 6

D.C. Code § 16–1901 .............................................................................. 6


<u>Regulations</u>

28 C.F.R. §§ 2.26, 2.27 ............................................................................ 7

28 C.F.R. § 2.214 ................................................................................... 15

Petitioners are several convicted criminals who seek a sweeping "temporary restraining order" releasing potentially "dozens" of class members who are detained for violations of their supervised release. Pls.' Mem. in Supp. of Mot. for Temp. Restraining Order & Prelim. Injunct. (ECF No. 3) ("Mem.") at 1-2. They believe they are entitled to this windfall because Congress failed to extend a sunsetting provision for the United States Parole Commission, which administers supervised release for criminals that violated the D.C. Code. Petitioners are wrong. Congress expressly sunset various functions of the Parole Commission but then repeatedly extended that deadline. Over a decade after the sunsetting provision, Congress delegated sweeping authority to the Parole Commission over D.C. Code offenders' supervised release. It never included an express sunsetting provision for that. So the Parole Commission continues to function. In any event, Petitioners can only seek relief through habeas. That comes with significant limits on class actions and relief. And the core relief they seek—release—would be an extraordinary and improper remedy here where Congress set up a scheme to allow district courts to assume the important role of ensuring that supervised release continues unabated. In any event, Petitioners cannot demonstrate an irreparable harm and the equities decisively cut against them, as releasing dozens of prisoners onto the streets and gutting supervised release in D.C. is about as contrary to the public interest as one can imagine. Moreover, even if the Court does grant Petitioners emergency relief, it should not order their release or that of others who are similarly situated. The Court should deny Petitioners' breathtaking request for a "temporary restraining order," which would involve issuing mass habeas relief before deciding the merits.

## BACKGROUND

In this suit, three D.C. Code offenders currently detained at the District of Columbia Jail sue the Parole Commission, the Commission's Acting Chairman, and the Attorney General of the United States, as well as the warden of the D.C. Jail (whom the undersigned do not represent).

One Petitioner, Kenan Braxton, who was convicted in 2023 for assault with a dangerous weapon and for unlawful possession of a firearm, Compl. ¶ 48, alleges that he is set for a final revocation hearing on October 29, 2025 for "technical violations," *id*. ¶¶ 3, 47. Those consist of failure to submit to drug testing and to report to his supervising officer on multiple occasions in July and August 2025; although he was hospitalized for part of August, the only explanation he offers for his failure to report prior to the hospitalization is that he "was confused over when he had to report," even though he has been "in the community and on supervision since February 10, 2024." *Id.* ¶¶ 48, 50-52.

Another Petitioner, Stanley Petty, pled guilty to robbery and unlawful possession of a firearm in 2021 and was sentenced to 66 months of incarceration, followed by three years of supervised release. *Id.* ¶ 55. He was released on July 11, 2025. *Id.* ¶ 56. Just two months later, on September 15, 2025, he was arrested for misdemeanor simple assault and misdemeanor second-degree theft. *Id.* ¶ 57. The Commission issued a warrant for him, which was executed on September 24, 2025. He is set for a probable cause hearing on October 6, 2025. *Id.* ¶ 60.

The third and final Petitioner, Michael Dunbar, pled guilty in 2023 to attempted second degree burglary, and was sentenced to 14 months of incarceration and three years of supervised release. *Id.* ¶ 63. He was released on March 19, 2025. *Id.* A month later, on April 16, 2025, the Commission issued a warrant charging him with "technical violations of supervised release," as well as "a new law violation related to the misdemeanor destruction of property." *Id.* ¶ 64. The latter case was dismissed on August 1, 2025, whereupon he was detained based on the Commission's warrant. *Id.* ¶ 65. A probable cause hearing was held on August 8, 2025. *Id.* ¶ 66. On August 11, 2025, the Commission denied release and ordered him be held in custody pending a revocation hearing. *Id.* ¶ 69. That hearing was held on October 1, 2025, at which Mr. Dunbar's

counsel objected that the Commission had no authority to hold a revocation hearing because its authorization assertedly had lapsed. *Id.* ¶¶ 70-71.

Petitioners, who seek to represent a class of indigent D.C. Code offenders who are or will be detained "solely by the Parole Commission and are pending action by the Parole Commission at midnight on October 1, 2025, or later," *id.* ¶ 76, bring three counts. The first, brought under the Administrative Procedure Act, *id.* ¶ 88, alleges that the Commission has acted "in excess of statutory jurisdiction [and] authority." 5 U.S.C. § 706(2). The second, an *ultra vires* claim, similarly alleges that the Commission has exceeded its statutory and regulatory authority. Compl. ¶ 90. The third seeks a writ of habeas corpus under 28 U.S.C. § 2241, contending that the Commission lacks authority to imprison the Petitioners. As relief, Petitioners seek the certification of a class, the release of themselves and all other individuals currently detained solely by the Parole Commission, an injunction to bar the Commission from issuing warrants, revoking, detaining or otherwise incarcerating the Petitioners, and a declaration that the Commission lacks authority to act. *Id.* at 15-16.

The Complaint was filed on October 1, 2025. On October 2, 2025, Petitioners filed a motion for temporary restraining order and for a preliminary injunction. Also on October 2, the Court ordered the parties to appear at noon on October 3, 2025, for a hearing and for Defendants to respond to Petitioners' motion for a temporary restraining order by 10 a.m. on October 3, 2025.

## LEGAL STANDARDS

"Temporary restraining orders and preliminary injunctions are 'extraordinary remed[ies] that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion.'" *Lofton v. District of Columbia*, 7 F. Supp. 3d 117, 120 (D.D.C. 2013) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). Such a request involves the exercise of a very far-reaching power that "should be sparingly exercised."

*Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (citation omitted).  The movant must demonstrate all of the following factors by "a clear showing": (1) likelihood of success on the merits; (2) irreparable harm absent preliminary emergency relief; (3) the balance of equities between the parties tips in favor of the movant; and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Where, as here, the government is an opposing party, the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).  In seeking such relief, "the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)) (internal quotation marks omitted).

Temporary restraining orders and preliminary injunctions are not "awarded as of right," but "[a]s a matter of equitable discretion, a preliminary injunction does not [even] follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943-44 (2018).  "Rather, a court must be persuaded as to all four factors." *Scottsdale Capital Advisors Corp. v. Fin. Indus. Regul. Auth., Inc.*, 678 F. Supp. 3d 88, 100 (D.D.C. 2023).  Importantly, a "preliminary injunction should not work to give a party essentially the full relief he seeks on the merits." *Dorfmann*, 414 F.2d at 1173 n.13.

## ARGUMENT

As explained below, Petitioners scarcely advance any arguments under their first two counts – alleging a violation of the Administrative Procedure Act and *ultra vires* action by the Commission – and Petitioners accordingly have not borne their burden to show entitlement under either of those counts for the extraordinary emergency relief they seek.  This opposition accordingly focuses on the habeas corpus claim brought under 28 U.S.C. § 2241.  Moreover, as the Court has only directed the Commission at this time to address Petitioners' motion for a

temporary restraining order, this brief does not address issues related to their claim that they represent a putative class, but the Commission notes that it is far from clear that Petitioners' habeas claims may be pursued on behalf of a class. *See Jennings v. Rodriguez*, 583 U.S. 281, 324 (2018) (Thomas, J., concurring) ("This Court has never addressed whether habeas relief can be pursued in a class action.").

I.    **Most of Petitioners' Causes of Action Fail at the Threshold.**

It is important to understand Petitioners' causes of action, and the deep flaws afflicting the majority of them. Petitioners primarily focus on habeas corpus, and for good reason. If Petitioners' claims sound in habeas, that is their only viable cause of action. The other causes of action must fail.

A.    **Habeas Corpus.**

Petitioners are fundamentally challenging the authority of their detention and/or ongoing enforcement of the conditions of their supervised release. In doing so, they seek release from either detention and/or enforcement of those conditions. Challenges to detention that seek release, even speedier release, must be brought in habeas. *See Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). This is even true when the relief would "necessarily imply the invalidity of [a] conviction or sentence." *Nance v. Ward*, 597 U.S. 159, 167 (2022). That principle applies to all of Petitioners' claims here, as they seek to invalidate the actions of the Parole Commission and thus seek release from custody or conditions of supervised release. *See Goldsmith v. Garrett*, No. 24-1234, 2024 WL 3833300, at *2 (7th Cir. Aug. 15, 2024) (challenges to supervised release sound in habeas); *accord Gonzalez v. Crosby*, 545 U.S. 524, 529-31 (2005) (focusing on the substance of a claim, not how it is pled, and holding that a Rule 60(b) motion may be a habeas petition). As a result, Petitioners can *only* bring habeas claims. *Id.* Indeed, the Supreme Court recently vacated an injunction brought under the Administrative

Procedure Act ("APA") because the relief sought challenged the validity of removal and thus was "core" habeas. *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). Relatedly, the APA does not "confer[] authority to grant relief if any other statute that grants consent to suit . . . impliedly forbids the relief which is sought," 5 U.S.C. 702, or where an "adequate remedy in a court" is available under another scheme, 5 U.S.C. 704. Since Petitioners must bring their claims in habeas, the APA and *ultra vires* claims must be rejected.[1]

### B.    Administrative Procedure Act.

Even if Petitioners could use other causes of action, any APA claim would fail. This is because of the "final agency action" doctrine. *Ass'n of Flight Attendants-CWA v. Chao*, 493 F.3d 155, 160 (D.C. Cir. 2007). Petitioners do not meaningfully engage with this threshold barrier to APA relief. Under the APA, only "final agency action" is reviewable. 5 U.S.C. § 704. Agency action is a "rule, order, license, sanction, relief, or the equivalent[.]" *Id.* § 551(13). For the action to be "final," it (1) "must mark the 'consummation' of the agency's decisionmaking process," rather than being "of a merely tentative or interlocutory nature," and (2) "the action must be one

---

[1]    It is questionable whether Petitioners could file habeas in this Court before exhausting habeas in D.C. Superior Court. Petitioners were all convicted under the D.C. Code, which also determines their supervised release. Federal habeas, 28 U.S.C. § 2254, requires petitioners under "custody pursuant to the judgment of a State court" to have "exhausted the remedies available in the courts of the State" before filing in federal court. The D.C. Circuit has held that D.C. courts are "State" courts for the purposes of the Antiterrorism and Effective Death Penalty Act of 1996 and thus exhaustion in Superior Court is required before a federal action may be brought. *See Madley v. U.S. Parole Comm'n*, 278 F.3d 1306, 1309 (D.C. Cir. 2002); *Banks v. Smith*, 377 F. Supp. 2d 92, 95 (D.D.C. 2005). The D.C. Code allows habeas petitions in D.C. Superior Court if the petition is against someone who is not a federal officer. D.C. Code § 16–1901(c). Habeas petitions must be brought against the single "immediate custodian." *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). Here the immediate custodian is the Warden of the D.C. Jail, not the Parole Commission. As a result, Petitioners should have to exhaust their habeas remedies in D.C. Superior Court first. That said, some courts have said this does not apply to challenges to supervised release by the Parole Commission, and habeas petitions have long been filed in D.D.C., though the rationale seems limited and suspect. *See Gant v. Reilly*, 224 F. Supp. 2d 26, 36 (D.D.C. 2002).

by which 'rights or obligations have been determined,'" or from which "'legal consequences will flow[.]'"  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quoting *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)).

Petitioners challenge the Parole Commission's past and any future warrants, detentions, revocations of supervised release or parole, and other actions.  But none of those actions are final agency actions.  To start, future potential actions are by their nature not final agency actions.  Even for past warrants, detention, or revocation decisions, however, the "consummation" of agency decision making is not final until administrative appeals are exhausted.  *See* 28 C.F.R. §§ 2.26, 2.27.  This is why courts have held that petitioners cannot bring claims about supervised release issues before exhausting their administrative appeals.  *See Wallace v. Fed. Bureau of Prisons*, 604 F. App'x 329 (4th Cir. 2015); *Jenkins v. United States*, Civ. A. No. 14-0660 (CRC), 2014 WL 5784084, at *2 (D.D.C. Nov. 5, 2014).  Petitioners may protest that either they cannot exhaust because the Parole Commission is not operating or, if it is, it is doing so unlawfully.  To the first, that is an excuse for exhaustion under habeas, but it is not apparent that this excuses the requirement of a final agency action under the APA.  *See Ramsey v. U.S. Parole Comm'n*, 82 F. Supp. 3d 293, 300 (D.D.C. 2015), *aff'd*, 840 F.3d 853 (D.C. Cir. 2016).  Thus, Petitioners can still bring a habeas claim despite a similar exhaustion doctrine, but not an APA claim.  To the other point, agencies can still adjudicate issues with their own authority before being challenged, especially when a challenge is not constitutional but rather statutory.  In sum, Petitioners here cannot claim that any of the challenged Parole Commission actions (especially those that are prospective) are final agency actions or that Petitioners exhausted their possible remedies.

### C.    *Ultra Vires.*

*Ultra vires* claims are "essentially a Hail Mary pass."  *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665 (2025).  This is because a plaintiff must establish that "(1) review is not expressly

precluded by statute," (2) "there is no alternative procedure for review of the statutory claim," and (3) the challenged action is "plainly" in "excess of [the agency's] delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Glob. Health Council v. Trump*, No. 25-5097, 2025 WL 2480618, at *12 (D.C. Cir. Aug. 28, 2025) (quoting *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022)).  In addition, the action must violate a clear "prohibition," and "the prohibition at issue must confer rights upon the individual seeking ultra vires review." *Id.*  Petitioners fail out of the gates because they can and have brought a habeas claim.  Even so, there is no clear statutory prohibition on anything the Parole Commission has done, much less one that confers rights on Petitioners.

## II.  Petitioners Are Unlikely to Succeed on the Merits of Their Claims Because the Commission Retains Authority At Least as to D.C. Code Offenders.

Petitioners cannot show a likelihood of success on the merits of their claims.  The Commission continues to have statutory "authority" over D.C. Code offenders through the end of their supervised release periods, and Congress has never curtailed that authority after granting the Parole Commission such broad authority in 1997, overriding Congress's plans over a decade earlier to sunset the Commission.

Specifically, in 1984, in tandem with the abolition of federal parole, Congress established by law a plan to sunset the Parole Commission, which at that time was focused on federal offenders and a relatively smaller number of offenders transferred to the United States under international prisoner transfer treaties.  *See* Comprehensive Crime Control Act of 1984 § 235, Pub. L. No. 98-473, 98 Stat. 1976, 2032 (1984); *id.* § 223(m)(3).  Despite that, over a decade later, Congress granted the Commission new and sweeping authority over supervised release for violations by D.C. Code offenders.  And by contrast to the statutory provision eventually sunsetting the Parole

Commission's other duties, Congress never included such a provision for its D.C. Code offender supervision duties.

Thus, at least for D.C. Code offenders – the sole Petitioners in this action – the Commission retains its statutory authority. Specifically, long after Congress had set a five-year period for the Commission to sunset (which it subsequently continued to renew), Congress instead breathed fresh life into the Commission, with no temporal limitation whatsoever imposed on its future duties and existence with respect to D.C. Code offenders. In the National Capital Revitalization and Self-Government Act of 1997, Congress prescribed that "the United States Parole Commission shall assume the jurisdiction and authority of the Board of Parole of the District of Columbia to grant and deny parole, and to impose conditions upon an order of parole, in the case of any imprisoned felon who is eligible for parole or reparole under the District of Columbia Code." Pub. L. No. 105–33, 111 Stat. 712, 745, § 11231(a)(1) (1997). In the very next subsection, Congress abolished the District of Columbia Board of Parole. *Id*. § 11231(b). It also overrode earlier limitations on the number of Parole Commissioners by amending the Parole Commission Phaseout Act of 1996, instead *increasing* the number of Parole Commissioners. *Id.* § 11231(d). It further provided the Commission "authority" over D.C. Code offenders "until completion of the term of supervised release." *Id.* § 11233(c)(2). In providing these new, unending duties for the Commission, Congress overrode the 1984 plan to wind down the Commission, for the Commission's earlier focus on federal offenders had been replaced with a new ongoing duty to supervise D.C. Code offenders.[2] "[S]tatutes enacted by one Congress cannot bind a later Congress, which remains free

---

[2]    Petitioners, all of whom were sentenced for crimes under the D.C. Code, only raise claims involving those "on supervised release or parole for D.C. Code offenses…." Compl. (ECF No. 1) ¶ 76. Thus, this Court should not consider what effects, if any, the events of the last few days have had as to any federal offenders still eligible for parole under pre-1984 law, nor would Petitioners have standing to raise any such arguments, as federal sentences and the laws governing federal

to repeal the earlier statute, to exempt the current statute from the earlier statute, to modify the earlier statute, or to apply the earlier statute but as modified.  Congress remains free to express any such intention either expressly or by implication as it chooses." *Dorsey v. United States*, 567 U.S. 260, 274 (2012) (citations omitted).  Here, the necessary implication of the 1997 expansion of the Commission and granting it expansive new duties for D.C. Code offenders is that the 1984 sunset provision does not apply for the Parole Commission's functions regarding the D.C. Code.[3]  This is unsurprising, because Congress is well aware that over 90% of those under the Commission's jurisdiction are D.C. Code offenders. Parole Commission Report to Congress 2022, at 6 (95.38% of those under supervision are D.C. Code offenders), *Hagans v. U.S. Parole Comm'n*, Civ. A. No. 25-1671 (ACR) (ECF No. 12-6). So it makes perfect sense that Congress would be fine sunsetting 5% of the Commissions legacy work but not the core 95% that it delegated later.

Moreover, any non-express repeal of the Commission's authority to supervise D.C. Code offenders and determine their parole status is precluded by 1 U.S.C. § 109.  Contrary to Petitioners' demand for immediate release, no "penalty, forfeiture or liability incurred under [a] statute" may be released or extinguished by the repeal of such statute, "unless the repealing Act shall so expressly provide . . . .  The expiration of a temporary statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary

---

parole and the supervision of federal offenders are distinct from those applicable to D.C. Code offenders like Petitioners.

[3]     The Public Defender Service for the District of Columbia cannot properly represent the Petitioners in this action because PDS already represents at least one currently-incarcerated individual who is set for a parole hearing in approximately one month.  If, as Petitioners argue in their motion, the Commission no longer exists and cannot lawfully take actions, then it would not be possible for the Commission to order parole for PDS's currently-incarcerated client, but rather he would have to serve the remainder of his sentence.  This conflict prevents PDS from continuing to represent the Petitioners in this action.

statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability." *See, e.g., Nader v. Saxbe*, 497 F.2d 676, 678 n.8 (D.C. Cir. 1974) ("The repealing statute did not provide for extinguishment of liabilities incurred under the [former statute]. Accordingly, the liabilities survive repeal."). Here, Congress neither expressed nor implied the termination of the Commission's decisions to impose "penalt[ies]" or "liabilit[ies]" on D.C. Code offenders for violations, whether technical or otherwise, of their conditions of parole or supervised release, and thus such penalties necessarily continue, as does the Parole Commission.

## III.    Petitioners' Requested Remedies Are Improper, and Any Remedies Are Limited.

Even if Petitioners' allegation that the Parole Commission is defunct was correct and Petitioners had a valid claim, that does not mean that supervised release simply disappears in D.C. and several dozen criminals should be released onto the street. If Petitioners are right that the sunsetting provision applies to the Parole Commission's duties for the D.C. Code, then the rest of the statute applies as well. *See* Sentencing Reform Act, Public Law 98-473, 98 Stat. 2033, § 235(b). There, Congress expected the Parole Commission to cease operations eventually and crafted a system to allow for supervised release to operate unabated. *Id.* The statute says that "all laws in effect" at the time of the act "shall remain in effect as to the individual until the expiration of his sentence, except that the district court shall determine whether release should be revoked or the conditions of release amended for violation of a condition of release." *Id.* § 235(b)(4)(B)(ii). This means that when the Parole Commission "no longer exist[s]," then the "district court will assume the authority to revoke or modify the conditions of parole." *Walden v. U.S. Parole Comm'n*, 114 F.3d 1136, 1139 (11th Cir. 1997). This has two important implications for any remedy the Court may consider.

First, the Parole Commission's preexisting actions are still valid.  The statute makes clear that at the time the Parole Commission ceases, the laws applying to the person remain in effect and then the district court can carry out revocation or amend the release conditions to address violations.  98 Stat. 2033, § 235(b)(4)(B)(ii) (all laws "remain in effect as to the individual until the expiration of his sentence, except that the district court shall determine, in accord with the Federal Rules of Criminal Procedure, whether release should be revoked or the conditions of release amended for violation of a condition of release").  Thus, a previous determination by the Parole Commission to issue a warrant, detain, or revoke release prior to the sunset is still valid and can just be picked up by a district court.  Indeed, everyone agrees that the Parole Commission was validly operating before October 1.  So there is no basis for declaring that actions taken by the Parole Commission before the sunset are invalid.  All the Petitioners in detention were detained based on existing warrants, probable cause determinations, or warrants.  Petitioners' request for immediate release is premised on the idea that preexisting orders by the Parole Commission are no longer valid.  But as explained, that is not the case.

By analogy, the Supreme Court has upheld sentences and even convictions by judges who were not validly appointed under the "de facto officer doctrine," which "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient."  *Ryder v. United States*, 515 U.S. 177, 180–81 (1995).  The case here is even stronger.  No one questions that the Parole Commission had the proper authority to issue warrants, detain individuals, and revoke their supervised release just a couple days ago.  If even a conviction by a judge who never had lawful authority can be upheld, then, at a minimum, previous actions by the Parole Commission can

continue to have validity.  Only new actions would lack authority.  But that would not justify releasing everyone subject to a preexisting order.

Second, even if the Parole Commission's actions are invalid, the statute provides that a "district court will assume the authority to revoke or modify the conditions of parole." *Walden*, 114 F.3d at 1139.  So again, there are no grounds for releasing the Petitioners either based on past actions or concern that they will not receive adequate process in the future.  The federal district court could simply adopt and ratify the Parole's Commission's actions and continue to administer supervised release and parole in D.C. going forward.  This is hardly novel.  This is how every other district court handles supervised release, including this Court for revocations of federal supervised releasees.  *See, e.g., United States v. Johnson*, 2025 WL 2538837, at *1 (D.D.C. Sept. 4, 2025). Indeed, Petitioners themselves argue that this is what should happen and refer to a plan that proposed something similar.

Petitioners may argue that convictions of the D.C. Code should not go to a federal district court.  But Petitioners have conceded the premise twice over.  To start, Petitioners argue that the sunset provision, which does not mention the D.C. Code, applies equally here.  While Defendants disagree, if that is the case then the provision allowing a district court to take up supervised release applies as well.  Moreover, Petitioners brought a habeas petition here rather than in the District of Columbia Superior Court, asserting that challenges to Parole Commission revocations belong here. So this Court could hold that any future supervised release actions must go through the federal court.  It could also use habeas petitions like this one to adjudicate contested revocations to ensure due process.  *See, e.g., Rahim v. U.S. Parole Comm'n*, 77 F. Supp. 3d 140, 143 (D.D.C. 2015) (habeas challenge to lack of hearing).

The bottom line is that Congress did not contemplate the release of D.C. convicts following the sunset of the Commission.  Instead, Congress allowed district courts to carry on preexisting and future revocations.  Ordering these criminals to be released would be unnecessary, harmful, and contrary to Congress' scheme.

Petitioners' other requests for relief fare no better.  Petitioners can only seek relief under habeas, yet they seek a declaration that the Parole Commission cannot take certain acts and a prospective injunction against any future actions.  But habeas does not allow for a declaratory judgment or for a prospective injunction against actions that have not been taken.  *See Jackson v. Scalia*, 780 F. Supp. 2d 81, 83 (D.D.C. 2011).  Nor does request for such relief help Petitioners escape the binds of habeas.  *See LoBue v. Christopher,* 82 F.3d 1081, 1082 (D.C. Cir. 1996).  So Petitioners can only seek limited remedies related to their current detention and supervised release.  And for those remedies, the Court should find alternatives to releasing numerous criminals who violated their supervised release conditions.[4]

## IV.    Petitioners Cannot Establish Irreparable Harm.

Even if Petitioners were likely to succeed on the merits (they are not), they cannot demonstrate any irreparable harm.  Irreparable harm is a necessary element that Petitioners must establish in order obtain preliminary relief.  *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (lack of irreparable harm is "grounds for refusing to issue a preliminary injunction" by itself).  This is a "high standard" that requires "[t]he injury complained of [to be] of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm."  *Id.* (internal

---

[4]    In addition, the Court should not issue sweeping prospective relief for a large class before class certification has been adjudicated.  Petitioners just filed their motion for class certification last night.  Defendants do not believe a habeas class action is proper, and even under Rule 23 Petitioners' motion fails. But Defendants need time to respond.  If the Court issues any relief, it should be solely for the named Petitioners.

quotation marks omitted; emphasis in original).  The injury "must be both certain and great; it must be actual and not theoretical."  *Id.* (quotation omitted).

Petitioners argue any detention constitutes irreparable harm and the conditions in the D.C. Jail are particularly harmful.  But the alleged harms are not caused by the asserted sunsetting of the Parole Commission.  The cause of any harm is that these criminals committed a crime and then are at least alleged to have violated their terms of supervised release or parole.  Even if the Parole Commission is found to now be defunct, as explained, its previous orders remain valid.  If Petitioners are awaiting a future hearing, the Parole Commission only has to provide them within 65 or 90 days of a warrant's execution.  *See* 28 C.F.R. § 2.214(a); 28 C.F.R. § 2.214(e).  Within that time, Congress could easily reinstate the Parole Commission to its full range of duties, at which point, even under Petitioners' logic, the Commission could then hold timely hearings.  In addition, as noted, it is possible for district courts to handle alleged violations of conditions of parole and supervised release instead.  Moreover, Petitioners seek a class wide injunction preventing the Parole Commission from taking any actions going forward.  Petitioners have done nothing to show that such actions are imminent.  And the Court should be especially cautious to order such relief where Congress may act at any moment.  In any event, this does not justify a temporary restraining order with only one day to brief the issues.

## V.    The Balance of the Equities and the Public Interest Favor Defendants.

The balance of harms and the public interest decisively favor Defendants here, as Petitioners' request would release several dozen criminals and eradicate the enforcement of supervised release and parole conditions for D.C. Code violations.  Where the government is a party, these two factors "merge."  *Nken*, 556 U.S. at 435.  The "public's interest in effective law enforcement is so compelling that" even constitutional claims sometimes fail as a result. *See In re Grand Jury Proc.*, 810 F.2d 580, 586 (6th Cir. 1987). The harm to the government and the public

is stark.  To start, Petitioners are criminals who have credibly violated duly imposed conditions of supervised release and were issued warrants for their detention.  Petitioner Braxton was convicted of assault with a dangerous weapon and unlawful possession of a firearm.  The Commission held a probable cause hearing and found that he failed to submit to drug testing in violation of his supervised release.  Petitioner Petty was convicted of robbery and unlawful possession of a firearm.  The Commission issued a warrant because he was arrested for misdemeanor simple assault and misdemeanor second-degree theft.  Petitioner Dunbar was convicted of attempted second degree burglary and received both a probable cause and revocation hearing for violation of his supervised release and a law on the destruction of property.  And that is just the named Petitioners that Petitioners' counsel have chosen to highlight; who knows the serious crimes and violations that various class members may have committed.  Yet Petitioners think they should be released without anything more.  In fact, astonishingly, Petitioners argue that incarceration makes the public *less* safe.  Recent experience, studies on recidivism, and public polling demonstrate the opposite.[5]

Importantly, Petitioners want to stop the Parole Commission from doing anything in the future.  If Petitioners' theories are correct, this would effectively end the enforceability of

---

[5] Jakob Dupuis, *Lock Up Repeat Offenders*, City Journal, Oct. 2, 2025, (reviewing the case for incarceration in light of recent repeat offender incidents such as the murder of Iryna Zarutska), https://www.city-journal.org/article/crime-incarceration-prison-repeat-offenders; Cicero Institute, *The Case for Incarceration*, Oct. 2, 2025, https://ciceroinstitute.org/research/the-case-for-incarceration/ ; United States Sentencing Commission, Recidivism Among Federal Violent Offenders, 2019, (recidivism among violent offenders is extremely high), https://www.ussc.gov/research/research-reports/recidivism-among-federal-violent-offenders#:~:text=Key%20Findings,violent%20offenders%20was%2024%20months; AP-NORC, *Most say crime is a major problem in America's cities, but few support a federal takeover of police departments*, Aug. 27, 2025, (over 80% say crime in major cities is a serious problem and over 50% approve of the President's job on crime) https://apnorc.org/projects/most-say-crime-is-a-major-problem-in-americas-cities-but-few-support-a-federal-takeover-of-police-departments/.

conditions of supervised release and parole under the D.C. Code. The consequences are staggering. Existing supervised release and parole conditions would become meaningless and unenforceable, eliminating an important tool for supervision and rehabilitation. The consequences may even be perverse, resulting in higher sentences since supervised release would no longer be a viable option. The result is also demonstrably unfair. Criminals in every other state still face supervised release. So do federal criminals in D.C. In fact, just recently those convicted under the D.C. Code were subject to supervised release. But because Petitioners were lucky enough to be mid-stream when Congress temporarily failed to fund the government, they get a massive windfall. This undermines public confidence in the justice system and puts public safety at risk. Petitioners' only argument to the contrary is to assume their conclusion: that the Parole Commission is acting unlawfully. While Defendants disagree about the lawfulness of the Parole Commission's actions, even if Petitioners were correct, that cannot justify a sweeping TRO that releases "dozens" of criminals into the streets overnight and prevents enforcement of conditions of supervised release and parole for over a thousand D.C. Code offenders. The damage to the government and the public interest is difficult to overstate.

*    *    *

- 17 -

## CONCLUSION

For these reasons, the Court should deny Petitioners' extraordinary and novel request for a temporary restraining order of this sort. At a minimum, the Court should avoid releasing Petitioners much less an entire class of unknown criminals.


Dated: October 3, 2025                 Respectfully submitted,

                                       BRETT A. SHUMATE
                                       Assistant Attorney General
                                       Civil Division

                                       By: */s/ Tiberius T. Davis*
                                       TIBERIUS DAVIS
                                       Counsel to the Assistant Attorney General
                                       Civil Division
                                       U.S. Department of Justice
                                       P.O. Box 878, Ben Franklin Station
                                       Washington, DC 20044-0878
                                       (202) 514-2000
                                       tiberius.davis@usdoj.gov

                                       JEANINE FERRIS PIRRO
                                       United States Attorney

                                       PETER C. PFAFFENROTH
                                       Assistant United States Attorney


                                       *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KENAN BRAXTON, *et al.*, <br><br>            *Plaintiffs*, <br><br>      v. <br><br> UNITED STATES PAROLE COMMISSION, *et al.*, <br><br>            *Defendants*. | Civil Action No. 25-3534 (ACR) |

## **[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiffs' motion for temporary restraining order, the opposition thereto, and the entire record herein, it is hereby

ORDERED that Plaintiffs' motion is DENIED.


SO ORDERED:


_____                    _____
Date                                                              Judge Ana C. Reyes
                                                                      United States District Judge