APPEAL,TYPE–D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:25–cv–03534–SLS</u>
### *Internal Use Only*

BRAXTON et al v. UNITED STATES PAROLE
COMMISSION et al
Assigned to: Judge Sparkle L. Sooknanan
Cause: 28:2241 Petition for Writ of Habeas Corpus (federa

Date Filed: 10/01/2025
Jury Demand: None
Nature of Suit: 530 Prisoner Petition:
General (Habeas Corpus)
Jurisdiction: Federal Question

**Plaintiff**

**KENAN BRAXTON**                    represented by **Jonathan W. Anderson**
PUBLIC DEFENDER SERVICE FOR
DC
633 Indiana Avenue NW
Washington, DC 20004
202–824–2740
Email: <u>janderson@pdsdc.org</u>
*ATTORNEY TO BE NOTICED*

**Megan Yan**
PUBLIC DEFENDER SERVICE OF THE
DISTRICT OF COLUMBIA
633 3rd Street NW
Washington, DC 20001
202–550–6472
Email: <u>myan@pdsdc.org</u>
*ATTORNEY TO BE NOTICED*

**Teressa Hamsher**
PUBLIC DEFENDER SERVICE
District of Columbia
633 3rd Street NW
Washington, DC 20001
202–336–2576
Email: <u>thamsher@pdsdc.org</u>
*ATTORNEY TO BE NOTICED*

**Zoe E. Friedland**
PUBLIC DEFENDER SERVICE FOR
THE DISTRICT OF COLUMBIA
633 Indiana Avenue NW
Washington, DC 20004
(202) 480–0349
Fax: (202) 824–2123
Email: <u>zfriedland@pdsdc.org</u>
*ATTORNEY TO BE NOTICED*

Hanna Perry
PUBLIC DEFENDER SERVICE FOR
THE DISTRICT OF COLUMBIA
633 Indiana Avenue NW
Washington, DC 20004
202–579–0633
Email: hperry@pdsdc.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**STANLEY PETTY**                    represented by    **Jonathan W. Anderson**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Megan Yan**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Teressa Hamsher**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Zoe E. Friedland**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Hanna Perry**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**MICHAEL DUNBAR**                   represented by    **Jonathan W. Anderson**
*Individually and on behalf of all others*            (See above for address)
*similarly situated*                                  *ATTORNEY TO BE NOTICED*

                                                      **Megan Yan**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Teressa Hamsher**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Zoe E. Friedland**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Hanna Perry**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **UNITED STATES PAROLE COMMISSION** | represented by | **Tiberius T Davis** U.S. DEPARTMENT OF JUSTICE Civil Division 950 Pennsylvania Avenue Suite 400 Washington, DC 20530–0001 202–514–4357 Email: tiberius.davis@usdoj.gov *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Peter C. Pfaffenroth**
U.S. ATTORNEY'S OFFICE for D.C.
Civil Division
555 Fourth Street, NW
Washington, DC 20530
(202) 252–2513
Fax: (202) 252–2599
Email: peter.pfaffenroth@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **PATRICIA K. CUSHWA** *in her official capacity as Acting Chairman of the United States Parole Commission* | represented by | **Tiberius T Davis** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Peter C. Pfaffenroth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **PAMELA J. BONDI** *in her official capacity as Attorney General of the United States* | represented by | **Tiberius T Davis** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Peter C. Pfaffenroth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **JOE PAGE, III** *in his official capacity as Warden of the D.C. Jail* | represented by | **Conrad Z. Risher** OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA 400 6th Street NW |

Washington, DC 20001
202–417–5394
Email: conrad.risher@dc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiberius T Davis**
(See above for address)
*TERMINATED: 10/03/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/01/2025 | 1 | COMPLAINT against PAMELA J. BONDI, PATRICIA K. CUSHWA, Joe Page, III, UNITED STATES PAROLE COMMISSION ( Filing fee $ 405 receipt number ADCDC–11999299) filed by KENAN BRAXTON, MICHAEL DUNBAR, STANLEY PETTY. (Attachments: # 1 Civil Cover Sheet, # 2 Summons United States Attorney General, # 3 Summons Pamela Bondi, # 4 Summons Patricia Cushwa, # 5 Summons Joe Page III, # 6 Summons U.S. Attorney's Office, # 7 Summons United States Parole Commission)(Perry, Hanna) (Entered: 10/01/2025) |
| 10/01/2025 | 2 | NOTICE OF RELATED CASE by KENAN BRAXTON, MICHAEL DUNBAR, STANLEY PETTY. Case related to Case No. 25–cv–01671. (Perry, Hanna) (Entered: 10/02/2025) |
| 10/02/2025 | 3 | MOTION for Temporary Restraining Order *and Preliminary Injunction* by KENAN BRAXTON, MICHAEL DUNBAR, STANLEY PETTY. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Text of Proposed Order, # 8 Declaration Certificate of Counsel)(Perry, Hanna). Added MOTION for Preliminary Injunction on 10/3/2025 (znmw). (Entered: 10/02/2025) |
| 10/02/2025 | 4 | NOTICE of Appearance by Zoe E. Friedland on behalf of All Plaintiffs (Friedland, Zoe) (Entered: 10/02/2025) |
| 10/02/2025 | 5 | NOTICE of Appearance by Megan Yan on behalf of All Plaintiffs (Yan, Megan) (Entered: 10/02/2025) |
| 10/02/2025 | | NOTICE OF NEW CASE ERROR The following error(s) need correction: Invalid signature – Civil Cover Sheet. Please file the signed document using the event Errata. All filings must have an original signature or /s/ Attorney Name to represent an electronic signature of the filer. (zmtm) (Entered: 10/02/2025) |
| 10/02/2025 | | Case Assigned to Judge Ana C. Reyes. (zmtm) (Entered: 10/02/2025) |
| 10/02/2025 | 6 | ERRATA *Civil Cover Sheet* by KENAN BRAXTON, MICHAEL DUNBAR, STANLEY PETTY re 1 Complaint,,. (Perry, Hanna) (Entered: 10/02/2025) |
| 10/02/2025 | 7 | NOTICE of Appearance by Teressa Hamsher on behalf of All Plaintiffs (Hamsher, Teressa) (Entered: 10/02/2025) |
| 10/02/2025 | | MINUTE ORDER. The Court ORDERS the parties to appear before Judge Reyes at 12:00 PM on Friday, October 3, 2025 via video conference for a hearing on Plaintiffs' 3 Motion for a Temporary Restraining Order. |

| | | |
|---|---|---|
| | | The Court ORDERS Defendants to respond to Plaintiffs' 3 Motion for a Temporary Restraining Order by 10am on October 3, 2025.<br><br>The Court ORDERS Plaintiffs' counsel to convey the information in this Minute Order to Defendants, whose counsel has not yet entered an appearance. Signed by Judge Ana C. Reyes on 10/2/2025. (lcacr1) (Entered: 10/02/2025) |
| 10/02/2025 | 8 | NOTICE of Appearance by Jonathan W. Anderson on behalf of All Plaintiffs (Anderson, Jonathan) (Entered: 10/02/2025) |
| 10/02/2025 | 9 | MOTION to Certify Class *and Appoint Class Counsel* by KENAN BRAXTON, MICHAEL DUNBAR, STANLEY PETTY. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Text of Proposed Order)(Friedland, Zoe). Added MOTION to Appoint Lead Counsel on 10/3/2025 (znmw). (Entered: 10/02/2025) |
| 10/03/2025 | 10 | NOTICE of Appearance by Tiberius T Davis on behalf of All Defendants (Davis, Tiberius) (Main Document 10 replaced on 10/3/2025) (znmw). (Entered: 10/03/2025) |
| 10/03/2025 | 11 | RESPONSE re 2 *Defendants' Objections to Plaintiffs' Related–Case Designation* by PAMELA J. BONDI, PATRICIA K. CUSHWA, UNITED STATES PAROLE COMMISSION (Davis, Tiberius) Modified event title on 10/6/2025 (znmw). (Entered: 10/03/2025) |
| 10/03/2025 | 12 | Memorandum in opposition to re 3 MOTION for Temporary Restraining Order *and Preliminary Injunction* MOTION for Preliminary Injunction filed by PAMELA J. BONDI, PATRICIA K. CUSHWA, UNITED STATES PAROLE COMMISSION. (Davis, Tiberius) (Entered: 10/03/2025) |
| 10/03/2025 | 13 | NOTICE of Appearance by Peter C. Pfaffenroth on behalf of PAMELA J. BONDI, PATRICIA K. CUSHWA, UNITED STATES PAROLE COMMISSION (Pfaffenroth, Peter) (Entered: 10/03/2025) |
| 10/03/2025 | | MINUTE ORDER. Today's 12:00 PM hearing will be made accessible to the public telephonically via the Courtroom Public Access Line. The Public Access telephone number is 1–833–990–9400, and the meeting ID is 787605272. Signed by Judge Ana C. Reyes on 10/3/2025. (lcacr1) (Entered: 10/03/2025) |
| 10/03/2025 | 14 | NOTICE OF WITHDRAWAL OF APPEARANCE as to PAMELA J. BONDI, PATRICIA K. CUSHWA, UNITED STATES PAROLE COMMISSION. Attorney Tiberius T Davis terminated. (Davis, Tiberius) (Entered: 10/03/2025) |
| 10/03/2025 | 15 | NOTICE of Appearance by Conrad Z. Risher on behalf of JOE PAGE, III (Risher, Conrad) (Entered: 10/03/2025) |
| 10/03/2025 | | Minute Entry for Motion Hearing held on 10/3/2025 before Judge Ana C. Reyes. Plaintiffs' Motion 3 for Temporary Restraining Order, DENIED for the reasons stated on the record. Forthcoming order. Court Reporter: Christine Asif. (zljn) (Entered: 10/03/2025) |
| 10/03/2025 | | MINUTE ORDER. As discussed in the October 3, 2025 hearing, the Court DENIES Plaintiffs' 3 Motion for a TRO. The Court is taking under advisement Plaintiffs' 3 Motion for a Preliminary Injunction.<br><br>The Court ORDERS Plaintiffs to respond to Defendants' 11 Notice of Defendants' |

|  |  |  |
|---|---|---|
|  |  | Objections to Plaintiffs' Related–Case Designation on or before October 7, 2025. Signed by Judge Ana C. Reyes on 10/03/2025. (lcacr1) (Entered: 10/03/2025) |
| 10/03/2025 |  | Set/Reset Deadlines: Response due by 10/7/2025 (zakb) (Entered: 10/03/2025) |
| 10/03/2025 | 16 | RESPONSE re 11 Notice (Other) *of Defendants' Objections to Plaintiffs' Related Case Designation* filed by KENAN BRAXTON, MICHAEL DUNBAR, STANLEY PETTY. (Friedland, Zoe) (Entered: 10/03/2025) |
| 10/08/2025 | 17 | ORDER. Upon considering Defendants' 11 Notice of Objection and Plaintiffs' 16 Opposition thereto, the Court hereby DIRECTS the Clerk of the Court to return this case to the Calendar and Case Management Committee for random reassignment. See Order for details. Signed by Judge Ana C. Reyes on 10/8/2025. (lcacr1) (Entered: 10/08/2025) |
| 10/08/2025 | 18 | SUPPLEMENTAL MEMORANDUM to re 3 MOTION for Temporary Restraining Order *and Preliminary Injunction* MOTION for Preliminary Injunction filed by KENAN BRAXTON, MICHAEL DUNBAR, STANLEY PETTY. (Attachments: # 1 Exhibit F, # 2 Exhibit G, # 3 Exhibit H, # 4 Exhibit I, # 5 Exhibit J)(Perry, Hanna) (Entered: 10/08/2025) |
| 10/09/2025 | 19 | Case randomly reassigned to Judge Sparkle L. Sooknanan. Judge Ana C. Reyes is no longer assigned to the case as not related. (ztnr) (Entered: 10/09/2025) |
| 10/09/2025 |  | MINUTE ORDER. In light of the case reassignment, the Court ORDERS the Parties to meet and confer and to file a Joint Status Report by 12:00 PM on Friday, October 10, 2025, that proposes a schedule for further proceedings, including any further briefing on the pending motions. The Parties may also address any other issues that they believe will be helpful to the Court. Any disagreements should be noted in the Joint Status Report. Signed by Judge Sparkle L. Sooknanan on 10/9/2025.(lcal) (Entered: 10/09/2025) |
| 10/10/2025 | 20 | Joint STATUS REPORT by KENAN BRAXTON, MICHAEL DUNBAR, STANLEY PETTY. (Friedland, Zoe) (Entered: 10/10/2025) |
| 10/10/2025 |  | MINUTE ORDER. In light of the Parties' 20 Joint Status Report, the Court ORDERS that: 1) the Defendants shall file any response to the Plaintiff's 3 Preliminary Injunction Motion, 9 Class Certification Motion, and 18 Supplemental Memorandum by October 15, 2025; and 2) the Plaintiff shall file any reply by October 17, 2025. A hearing will be held in person on October 20, 2025, at 2:00 PM in Courtroom 14 before Judge Sparkle L. Sooknanan. Signed by Judge Sparkle L. Sooknanan on 10/10/2025. (lcal) (Entered: 10/10/2025) |
| 10/15/2025 | 21 | RESPONSE re 3 MOTION for Temporary Restraining Order *and Preliminary Injunction* MOTION for Preliminary Injunction filed by JOE PAGE, III. (Risher, Conrad) (Entered: 10/15/2025) |
| 10/15/2025 | 22 | RESPONSE re 3 MOTION for Temporary Restraining Order *and Preliminary Injunction* MOTION for Preliminary Injunction *Opposition* filed by PAMELA J. BONDI, PATRICIA K. CUSHWA, UNITED STATES PAROLE COMMISSION. (Davis, Tiberius) (Entered: 10/15/2025) |
| 10/15/2025 | 23 | RESPONSE re 9 MOTION to Certify Class *and Appoint Class Counsel* MOTION to Appoint Lead Counsel *Opposition* filed by PAMELA J. BONDI, PATRICIA K. CUSHWA, UNITED STATES PAROLE COMMISSION. (Davis, Tiberius) (Entered: 10/15/2025) |

| 10/17/2025 | 24 | REPLY to opposition to motion re 3 Motion for TRO,, Motion for Preliminary Injunction, filed by KENAN BRAXTON, MICHAEL DUNBAR, STANLEY PETTY. (Perry, Hanna) (Entered: 10/17/2025) |
|---|---|---|
| 10/17/2025 | 25 | REPLY to opposition to motion re 9 Motion to Certify Class,, Motion to Appoint Lead Counsel, filed by KENAN BRAXTON, MICHAEL DUNBAR, STANLEY PETTY. (Perry, Hanna) (Entered: 10/17/2025) |
| 10/20/2025 | | Minute Entry for Motion Hearing held before Judge Sparkle L. Sooknanan on 10/20/2025. Oral arguments submitted on Plaintiffs' Motion 3 for Preliminary Injunction. Motion taken under advisement. (Court Reporter: Elizabeth Davila) (lsj) (Entered: 10/20/2025) |
| 10/23/2025 | 26 | SUMMONS (6) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(zmtm) (Entered: 10/23/2025) |
| 10/23/2025 | 27 | NOTICE *concerning potential District of Columbia Superior Court assumption of United States Parole Commission's parole and supervision duties for D.C. Code offenders* by PAMELA J. BONDI, PATRICIA K. CUSHWA, UNITED STATES PAROLE COMMISSION re Motion Hearing (Pfaffenroth, Peter) (Entered: 10/23/2025) |
| 10/30/2025 | 28 | TRANSCRIPT OF PROCEEDINGS before Judge Sparkle L. Sooknanan, held on 10–20–2025; Page Numbers: 1 – 97. Date of Issuance: 10–30–2025. Court Reporter: Elizabeth Davila, Telephone number: 202–354–3242. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 11/20/2025. Redacted Transcript Deadline set for 11/30/2025. Release of Transcript Restriction set for 1/28/2026.(Davila, Elizabeth) (Entered: 10/30/2025) |
| 10/30/2025 | 29 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 10/23/2025. Answer due for ALL FEDERAL DEFENDANTS by 12/22/2025. (Yan, Megan) (Entered: 10/30/2025) |
| 11/03/2025 | 30 | MEMORANDUM OPINION re the Plaintiffs' 3 Motion for Preliminary Injunction. See the attached document for details. Signed by Judge Sparkle L. Sooknanan on 11/03/2025. (lcal) (Entered: 11/03/2025) |
| 11/03/2025 | 31 | ORDER denying the Plaintiffs' 3 Motion for Preliminary Injunction. See the 30 Memorandum Opinion for details. The Court further orders that the Parties meet and confer and jointly file a proposed expedited summary judgment briefing schedule by |

| | | November 6, 2025, for the Court's consideration. Signed by Judge Sparkle L. Sooknanan on 11/03/2025. (lcal) (Entered: 11/03/2025) |
|---|---|---|
| 11/05/2025 | 32 | Joint MOTION for Briefing Schedule by KENAN BRAXTON, MICHAEL DUNBAR, STANLEY PETTY. (Attachments: # 1 Text of Proposed Order)(Friedland, Zoe) (Entered: 11/05/2025) |
| 11/05/2025 | | MINUTE ORDER granting the Parties' 32 Joint Motion for Briefing Schedule and setting the schedule requested by the Parties. The Plaintiffs' Motion for Summary Judgment is due November 14, 2025. The Defendants' combined Opposition to Plaintiffs' Motion and Cross–Motion for Summary Judgment is due December 2, 2025. The Plaintiffs' combined Reply in support of their Motion for Summary Judgment and Opposition to the Defendants' Cross–Motion for Summary Judgment is due December 12, 2025. The Defendants' Reply in support of their Cross–Motion for Summary Judgment is due December 23, 2025. Signed by Judge Sparkle L. Sooknanan on 11/05/2025. (lcal) (Entered: 11/05/2025) |
| 11/10/2025 | 33 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 30 Memorandum & Opinion, 31 Order on Motion for Preliminary Injunction,, Set/Reset Deadlines, by KENAN BRAXTON, MICHAEL DUNBAR, STANLEY PETTY. Fee Status: No Fee Paid. Parties have been notified. (Perry, Hanna) (Entered: 11/10/2025) |
| 11/11/2025 | 34 | MOTION for Summary Judgment by KENAN BRAXTON, MICHAEL DUNBAR, STANLEY PETTY. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Text of Proposed Order)(Friedland, Zoe) (Entered: 11/11/2025) |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KENAN BRAXTON et al.
  1901 D Street SE
  Washington, DC 20003

      *Plaintiffs-Petitioners,*

     v.

UNITED STATES PAROLE
COMMISSION et al.

      *Defendants-Respondents.*

Civil Action No. 25 - 3534 (SLS)

### NOTICE OF APPEAL

Notice is hereby given this 10th day of November, 2025, that Kenan Braxton, Stanley Petty, and Michael Dunbar, Plaintiffs in the above-named matter, hereby appeal to the United States Court of Appeals for the District of Columbia Circuit from this Court's order entered on the 3rd day of November, 2025 (ECF Nos. 30, 31) denying Plaintiffs' Motion for a Preliminary Injunction (ECF No. 3).

As indigent individuals represented by the Public Defender Service for the District of Columbia, Plaintiffs-Appellants request a waiver of fees for this Notice of Appeal.

DATED: November 10, 2025
      Washington, D.C.

Respectfully submitted,

*/s/ Hanna Perry*
Hanna Perry (D.C. Bar No. 90003756)
Zoé Friedland (D.C. Bar No. 1781910)
Teressa Hamsher (D.C. Bar No. 90009447)
Megan Yan (D.C. Bar No. 1735334)
PUBLIC DEFENDER SERVICE FOR THE DISTRICT OF
COLUMBIA
633 3rd St. N.W.
Washington, D.C. 20001

Tel. 202-824-2198
hperry@pdsdc.org
zfriedland@pdsdc.org
thamsher@pdsdc.org
myan@pdsdc.org

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KENAN BRAXTON, *et al.*,

       *Plaintiffs*,

  v.

UNITED STATES PAROLE
COMMISSION, *et al.*,

       *Defendants*.

Civil Action No. 25 - 3534 (SLS)

Judge Sparkle L. Sooknanan

## <u>ORDER</u>

    For the reasons stated in the Court's Memorandum Opinion, ECF No. 30, the Court **DENIES** the Plaintiffs' Motion for Preliminary Injunction, ECF No. 3.

    **SO ORDERED.**

                                _____
                                SPARKLE L. SOOKNANAN
                                United States District Judge

Date:   November 3, 2025

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KENAN BRAXTON, *et al.*,

        *Plaintiffs*,

    v.

UNITED STATES PAROLE
COMMISSION, *et al.*,

        *Defendants*.

Civil Action No. 25 - 3534 (SLS)

Judge Sparkle L. Sooknanan

## <u>MEMORANDUM OPINION</u>

This case involves significant questions about the legitimacy of the United States Parole Commission in light of the ongoing federal government shutdown. Kenan Braxton, Stanley Petty, and Michael Dunbar are D.C. Code offenders who were recently arrested and detained by order of the Parole Commission for violations of the conditions of their supervised release. They bring this putative class action challenging the Commission's authority to order their detention or incarceration. They allege that the Commission was abolished at 12:01 a.m. on October 1, 2025, when Congress failed to pass a budget and extend the expiration date for the Commission's enabling statute. They now ask the Court to enter a preliminary injunction declaring that the Commission has no authority to act and ordering the release of 70 individuals currently incarcerated for violations of the conditions of their supervised release. The Court declines to take such extreme action.

Congress created the Parole Commission in 1976 to moderate the disparities resulting from indeterminate sentencing in federal criminal cases. Eight years later, as part of a suite of sentencing reforms, Congress abolished federal parole and set a five-year period to ultimately phase out the

Commission. But Congress extended that sunset, and in 1997, it gave the Commission new responsibilities by abolishing the D.C. Parole Board and charging the Commission with supervision of D.C. offenders. The 1997 statute seemed to contemplate a permanent role for the Commission with respect to D.C. offenders, though Congress never changed the prior law winding down the Commission. Instead, Congress has repeatedly extended the life of the Commission, most recently by including such extensions in continuing resolutions providing appropriations for the federal government. Thus, when Congress failed to pass a budget by midnight on September 30, 2025, it also failed to extend the authority of the Parole Commission.

The Plaintiffs' allegations in this case are grave. The Court takes seriously the prospect that the Commission is ordering the arrest and detention of D.C. offenders without legal authority to issue such orders. But at the same time, the Commission has been lawfully overseeing the supervision of D.C. Code offenders for nearly three decades. And there is no entity in place to take over these responsibilities. The Plaintiffs' proposed solution is extraordinary. They ask this Court to shutter the Parole Commission and issue a conditional writ releasing 70 individuals currently incarcerated *unless* the D.C. government (which is not a party to this suit) takes action in seven days to create or designate a new entity to assume the Commission's responsibilities. That is quite a task. Indeed, the Plaintiffs admit that the D.C. government has been unable to accomplish it despite repeated calls to do so over the past two decades. And what if the seemingly impossible proves to actually be impossible? The Plaintiffs propose that these 70 individuals be released and that approximately 1,600 D.C. offenders be effectively released from supervision with no entity in place to enforce violations of the conditions of their supervised release.

Such relief would blow up the existing supervised release system in the District, causing disruption and uncertainty for the offenders on supervision, the courts that sentenced them, the

government agencies involved in overseeing their supervision, and the public. And the Plaintiffs ask the Court to light this fuse knowing that shortly afterwards, Congress may pass a budget and clarify that the Commission retains its longstanding authority to oversee D.C. Code offenders, requiring the reassembly of the supervision program the Court has dismantled.

The Plaintiffs have not demonstrated that this relief is warranted. They may ultimately succeed in this litigation. At this early stage, however, the Plaintiffs have not sufficiently shown that they will be irreparably harmed in the absence of the preliminary injunction they request. Nor have they shown that the balance of equities and the public interest favor granting such relief. For these reasons, which are explained in greater detail below, the Court denies the Plaintiffs' motion for a preliminary injunction.

## BACKGROUND

### A.    Statutory Background

Congress established the United States Parole Commission in 1976 to "provide fair and equitable parole procedures" for federal prisoners. Parole Comm'n and Reorganization Act, Pub. L. No. 94–233, 90 Stat. 219, 219 (1976). At the time, the federal government employed a system of "indeterminate sentencing" in criminal cases. *Mistretta v. United States*, 488 U.S. 361, 363 (1989). "Statutes specified the penalties for crimes but nearly always gave the sentencing judge wide discretion to decide whether the offender should be incarcerated and for how long, whether he should be fined and how much, and whether some lesser restraint, such as probation, should be imposed instead of imprisonment or fine." *Id.* The almost "unfettered discretion" afforded to the sentencing judge under this regime led to "[s]erious disparities in sentences." *Id.* at 364–65.

Congress created the Parole Commission "to moderate" those disparities. *United States v. Addonizio*, 442 U.S. 178, 189 (1979). Congress empowered the Commission to make "[t]he final determination of precisely how much time an offender must serve," so it could "balanc[e]

differences in sentencing policies and practices between judges and courts in a system that is as wide and diverse as the Federal criminal justice system." H.R. Rep. No. 94–838, at 19 (1976) (Conf. Rep.). To accomplish this task, Congress entrusted the Commission with determining who could be released on parole, what the conditions of their parole would be, and when and whether their parole should be modified or revoked. Parole Comm'n and Reorganization Act § 4203 (setting out the "Powers and duties of the Commission"). Congress also tasked the Commission with promulgating "rules and regulations establishing guidelines" for how it would exercise its powers to "carry out a national parole policy." *Id.*

Unfortunately, the Commission could not solve the problems with indeterminate sentencing, and in 1984, Congress revisited the issue. Congress found that "the indeterminate-sentencing system had two 'unjustifi[ed]' and 'shameful' consequences." *Mistretta*, 488 U.S. at 366 (quoting S. Rep. No. 98–225, at 38, 65 (1983)). "The first was the great variation among sentences imposed by different judges upon similarly situated offenders. The second was the uncertainty as to the time the offender would spend in prison." *Id.* To address these "undesirable consequences," *id.*, Congress enacted two major reforms. It created the United States Sentencing Commission to enact sentencing guidelines aimed at promoting greater consistency and uniformity in sentencing. *See* Sentencing Reform Act of 1984, Pub. L. No. 98–473, § 991, 98 Stat. 1987, 2017 (1984) (setting forth the "establishment and purposes" of the U.S. Sentencing Commission); 28 U.S.C. § 991. And of particular importance here, it replaced federal parole with supervised release, which is overseen entirely by the federal courts rather than the Parole Commission. *See* 18 U.S.C. § 3583 (detailing how judicial officers set the terms and conditions of supervised release and determine if an individual's supervised release should be modified or revoked); *see also* Fed. R. Crim. P. 32.1. In so doing, Congress eliminated the "division of authority between the

sentencing judge and the parole officer" that had undermined efforts to make the sentencing of offenders and the time they actually served more standardized and predictable. *See Mistretta*, 488 U.S. at 366; *see also Dufur v. U.S. Parole Comm'n*, 34 F.4th 1090, 1093 (D.C. Cir. 2022).

In abolishing federal parole, Congress also enacted a plan to phase out the Parole Commission. Specifically, the Sentencing Reform Act provided that the Commission would cease to exist five years after the Act became effective. *See* § 235(b) (repealing "Chapter 311 of title 18, United States Code. 18 U.S.C. § 4201 et seq."—which establishes the Parole Commission—but providing that it would "remain in effect for five years after the effective date" of the legislation). During this five-year phaseout period, all laws relating to parole would remain in effect while the Commission wound up and "discharge[d] its final responsibilities toward those sentenced under the preexisting law." *Romano v. Luther*, 816 F.2d 832, 837 (2d Cir. 1987) (discussing § 235(b)). At the end of the five-year period, individuals still on parole would remain subject to the "then-repealed parole laws until their sentences expire[d]" but the authority to "revoke or modify" their parole conditions would transfer from the Parole Commission to the relevant federal district court. *Walden v. U.S. Parole Comm'n*, 114 F.3d 1136, 1139 (11th Cir. 1997) (citing § 235(b)(4)).

The end of the Commission's five-year phaseout period was initially set for November 1, 1992. *Id.* at 1138. Shortly before that date, however, Congress opted to extend the life of the Commission until 1997. *See* Fed. Courts Study Comm. Implementation Act of 1990, Pub. L. No. 101–650, § 316, 104 Stat. 5089, 5115 (1990) (changing year references in the Commission's sunset provisions from "five years" to "ten years"). Then in 1996, Congress provided another five-year extension. *See* Parole Comm'n Phaseout Act of 1996, Pub. L. No. 104–232, § 2, 110 Stat. 3055, 3055 (1996) (changing the year references in the Commission's sunset provisions from "ten years" to "fifteen years"). These extensions enabled the Commission to continue "oversee[ing]

cases of prisoners sentenced under prior law"—*i.e.*, the prior indeterminate-sentencing regime—while keeping the Commission on a path to eventual elimination. *Id.*

In 1997, however, Congress seemed to breathe new life into the Commission. In the National Capital Revitalization and Self-Government Act of 1997, Congress abolished the D.C. Board of Parole and provided that the U.S. Parole Commission would assume the Board's responsibility for overseeing the parole of offenders who committed felonies "under the District of Columbia Code." Pub. L. No. 105–33, § 11231, 111 Stat. 712, 745 (1997); D.C. Code § 24-131(a). In so doing, Congress granted the Commission authority over D.C. offenders sentenced to supervised release and increased the authorized number of Parole Commissioners to five—a bump up from the two-commissioner cap imposed by the 1996 Phaseout Act. §§ 11231, 11233.

Notably, the Revitalization Act did not expressly extend the sunset date for the Commission beyond the 2002 date set by the Phaseout Act. But when that date approached, Congress chose to again kick the can down the road. *See* 21st Century Dep't of Justice Appropriations Authorization Act, Pub. L. No. 107–273, § 11017(a), 116 Stat. 1758, 1824 (2002) (extending the fifteen-year sunset period to eighteen years). In the two decades since that extension, Congress has kicked that can again, and again, and again, often a little less far than the time before. *See, e.g.*, U.S. Parole Comm'n Extension and Sentencing Comm'n Authority Act of 2005, Pub. L. No. 109–76, § 2, 119 Stat. 2035, 2035 (2005) (extending by three years); U.S. Parole Comm'n Extension Act of 2008, Pub. L. No. 110–312, § 2, 122 Stat. 3013, 3013 (2008) (extending by three years); U.S. Parole Comm'n Extension Act of 2011, Pub. L. No. 112–44, § 2, 125 Stat. 532, 532 (2011) (extending by two years).

In recent years, Congress's extensions have gone from years to months and have gotten tangled up in the continuing resolutions that Congress has repeatedly passed to avoid shutting

down the federal government. In September 2024, for example, Congress extended the Commission's sunset date for the three-month duration of its continuing resolution. *See* Continuing Appropriations Act, 2025, Pub. L. No. 118–83, §§ 106(3), 121, 138 Stat. 1524, 1526, 1528 (2024). When December 2024 rolled around, Congress added another three months. *See* American Relief Act, 2025, Pub. L. No. 118–158, § 101(1), 138 Stat. 1722, 1723 (2024). And, finally, in March 2025, Congress extended the Commission's sunset date until September 30, 2025. *See* Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119–4, §§ 1106, 1115, 139 Stat. 9, 12, 15 (2025). That, of course, brings us to the present day. On September 30, 2025, when Congress failed to pass an appropriations bill—leading to the ongoing federal government shutdown—it also failed to expressly extend the Commission's sunset provision.

### B.    Factual Background

"The following facts are alleged in the Complaint or drawn from declarations in the record that are not disputed in relevant part, except where otherwise noted." *Postal Police Officers Ass'n v. U.S. Postal Serv.*, 502 F. Supp. 3d 411, 415 (D.D.C. 2020).

Kenan Braxton has been serving a term of supervised release since February 2024, following D.C. Code felony convictions in 2023. Compl. ¶ 48, ECF No. 1. Mr. Braxton was arrested on September 10, 2025, "pursuant to a Parole Commission warrant" alleging that he had violated certain terms of his release by failing to submit to drug testing or report to his supervising officer on multiple occasions. Compl. ¶ 51. Mr. Braxton is "currently being held at the D.C. Jail . . . pending a final revocation hearing" regarding his alleged violations. Compl. ¶ 47.

Stanley Petty began a three-year term of supervised release in July 2025, after being incarcerated for D.C. Code felony convictions in 2021. Compl. ¶¶ 55–56. On September 15, 2025, Mr. Petty was arrested for "misdemeanor simple assault and misdemeanor second-degree theft."

Compl. ¶ 57. The next day, Mr. Petty was released on his own recognizance by the D.C. Superior Court and was ordered to appear again in court on November 20, 2025. Compl. ¶ 58. On September 19, 2025, however, the Parole Commission "issued a warrant application" for Mr. Petty, which was executed on September 24, 2025. Compl. ¶ 59. Since that date, Mr. Petty has been incarcerated at the D.C Jail. Compl. ¶ 60. On October 8, 2025, the Commission ordered that Mr. Petty continue to be detained pending a revocation hearing. Pls.' Suppl. Mem. Supp. Mot Prelim. Inj. (Pls.' Suppl. Mem.), Ex. G, ECF No. 18-2.

Michael Dunbar began a three-year term of supervised release in March 2025 following his incarceration for D.C. Code felony convictions in 2023. Compl. ¶ 63. On August 8, 2025, a Parole Commission hearing examiner held a probable cause hearing related to allegations that Mr. Dunbar had violated the terms of his supervised release by using illicit substances and committing misdemeanor destruction of property. Compl. ¶¶ 64–67. The hearing examiner found probable cause but recommended that Mr. Dunbar be reinstated to supervision rather than be incarcerated. Compl. ¶ 68. The Commission ignored this recommendation and, on August 11, 2025, ordered that Mr. Dunbar be held at the D.C. Jail pending a revocation hearing. Compl. ¶ 69. At the revocation hearing on October 1, 2025, Mr. Dunbar's counsel objected to the hearing, "stating that the Commission's authority had lapsed as of September 30, 2025 and that the Commission thus had no authority to hold a revocation hearing." Compl. ¶ 71. The hearing examiner responded that the Commission had been ordered by the U.S. Attorney General to continue operations. Compl. ¶ 71; *see also* Pls.' Mot. TRO and Prelim. Inj. (PI Mot.), Ex. A, ECF No. 3-2. On October 6, 2025, the Commission revoked Mr. Dunbar's supervised release and sentenced him to 16 months of incarceration. Pls.' Suppl. Mem., Ex. F, ECF No. 18-1.

Mr. Braxton, Mr. Petty, and Mr. Dunbar seek to represent a class of similarly situated individuals under Federal Rule of Civil Procedure 23. Compl. ¶ 76. The proposed class includes "all people financially unable to obtain adequate representation who are on supervised release or parole for D.C. Code offenses and who are or will be detained solely by the Parole Commission and are pending action by the Parole Commission at midnight on October 1, 2025, or later." Compl. ¶ 76. Mr. Braxton, Mr. Petty, and Mr. Dunbar are among 70 individuals currently being detained on orders of the Commission for violations of the conditions of their supervised release. PI Mot. Hr'g Tr. at 22 (Oct. 20, 2025), ECF No. 28. And the Commission is currently supervising approximately 1,600 individuals serving terms of supervised release. *Id.* at 67–68.

### C.    Procedural Background

The Plaintiffs filed a Complaint in this Court on October 1, 2025. The Complaint alleges that the United States Parole Commission "does not have Congressional authority to exist" and thus its continued actions—including issuing arrest warrants and jailing individuals who have violated the terms of supervised release—are unlawful. Compl. at 1. Specifically, the Plaintiffs claim that the Defendants' actions are *ultra vires* and violate the Administrative Procedure Act, and that the Plaintiffs are entitled to a writ of habeas corpus. Compl. ¶¶ 86–97. To remedy these violations, the Plaintiffs seek declaratory and injunctive relief. Compl. at 15–16. On October 2, 2025, the Plaintiffs filed a Motion for a Temporary Restraining Order and Preliminary Injunction, PI Mot., ECF No. 3, as well as a Motion for Class Certification and Appointment of Class Counsel, ECF No. 9. On October 3, 2025, Judge Ana Reyes denied the Plaintiffs' Motion for a Temporary Restraining Order. Min. Order (Oct. 3, 2025). The case was subsequently assigned to this Court after Judge Reyes determined that it is not related to another case pending before her against the Parole Commission. ECF No. 17, 19. The Preliminary Injunction and Class Certification Motions

are now fully briefed and ripe for review. *See* Defs.' Opp'n Mot. TRO, ECF No. 12; Pls.' Suppl. Mem, ECF No. 18; Defs.' Opp'n Prelim. Inj., ECF No. 22; Pls.' Reply Supp. Prelim. Inj. (PI Reply), ECF No. 24; Defs.' Opp'n Mot. Class Certification, ECF No. 23; Pls.' Reply Supp. Class Certification, ECF No. 25.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the movant must show that (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Id.* at 20. The latter two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## DISCUSSION

In assessing whether the Plaintiffs are entitled to preliminary relief, it is important to first identify the relief they are seeking. Notably, the Plaintiffs' requested relief has shifted over time. They initially sought immediate release from custody, *see* Proposed TRO and Prelim. Inj., ECF 3-7, but in later briefing appeared to soften this position in arguing that the "Court could order release within a short timeframe unless a judicial officer determines that detention is warranted," PI Reply at 20–21. The Court understood the Plaintiffs to be requesting that it order the D.C. Superior Court or this Court to hold expedited hearings to determine if individuals incarcerated pursuant to the Commission's authority should continue to be detained. At the most recent motion hearing, however, the Plaintiffs clarified that this is not the relief they seek. They are not asking the federal district court to take over supervision of the individuals currently supervised by the Parole Commission. *See* PI Mot. Hr'g Tr. at 31. Nor are they aware of any authority empowering this

Court to order the D.C. Superior Court to step into the Commission's shoes. *Id.* at 29–30, 32, 38. Instead, the Plaintiffs now seek a "conditional writ" that would give the D.C. government (presumably in consultation with Congress) *seven days* to create or designate a new agency to assume the Commission's responsibilities. *Id.* at 24, 27–30, 37–38. If no such entity is created or identified in seven days to review the detention decisions of the Parole Commission, the 70 individuals currently incarcerated on orders of the Commission would be released. *Id.* at 27–29. And the approximately 1,600 individuals serving terms of supervised release would effectively be released without any entity in place to enforce violations.

The Plaintiffs' request for preliminary relief comes up short on at least three of the four *Winter* factors. They have not shown that they will suffer irreparable harm in the absence of preliminary relief or that the balance of equities and the public interest favor granting the relief they request. Because these flaws are fatal, the Court denies the Plaintiffs' motion for a preliminary injunction without assessing their likelihood of success on the merits.

### A.    Irreparable Harm

A moving party seeking preliminary injunctive relief must "make some showing of irreparable harm" as a "threshold requirement" to obtaining such relief. *Beattie v. Barnhart*, 663 F. Supp. 2d 5, 8 (D.D.C. 2009) (citing *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 737, 747 (D.C. Cir. 1995)). The injury "must be both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (cleaned up). The D.C. Circuit "has said time and again that the degree of proof required for irreparable harm is high, and that a failure to surmount it provides grounds for refusing to issue a preliminary

11

injunction, even if the other three factors entering the calculus merit such relief." *Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519, 529 (D.C. Cir. 2019) (cleaned up).

Here, the Plaintiffs have not sufficiently shown that they are "likely to suffer irreparable harm" in the absence of the preliminary injunctive relief they seek. *Winter*, 555 U.S. at 20. The Plaintiffs attempt to establish irreparable harm in two ways. First, they argue that being detained by an agency that allegedly has no authority to detain them constitutes per se irreparable harm. Second, they suggest that the Commission imposes more severe sanctions (including incarceration) than would otherwise be imposed by judicial officers or others overseeing supervised release for D.C. offenders. The Court finds neither argument persuasive.

Taking these arguments in turn, the Plaintiffs primarily rest on the argument that they are irreparably harmed because they are being detained by an agency that has no authority to operate. *See* PI Mot. Hr'g Tr. at 82. But it is unclear how the Plaintiffs are being harmed at all by the Commission—rather than a different entity—overseeing their supervised release. While the Plaintiffs focus on the well-documented harms of detention and the current conditions at the D.C. Jail to establish irreparable harm, PI Mot. at 16−18, they have not shown that the relief they seek would result in their release. Assuming the Court shutters the Parole Commission, some other entity would need to make detention decisions. Indeed, the Plaintiffs themselves acknowledge that a finding that the Commission has no authority to act would not "disturb the existence of [their] terms of parole or supervised release," Pls.' Suppl. Mem. at 13, *see also* PI Reply at 8–10; would not disturb the "penalties attendant to violations of [their terms]," Pls.' Suppl. Mem. at 13; and would not remove the potential that violation of those terms could be sanctioned with "detention and revocation," PI Reply at 10. They acknowledge that any judicial officer stepping into the shoes of the Parole Commission may "order Plaintiffs or putative class members detained pending

12

revocation or even revoke supervised release and sentence them to terms of imprisonment." PI Reply at 11; *see also* PI Reply at 10 ("[I]f the Court enjoins the Commission from continuing to operate, Plaintiffs are not suddenly free from their terms of supervised release, the conditions attendant to their terms, or the potential of detention and revocation."). And their most recent requested relief—a conditional writ—assumes that the D.C. government will establish or designate an entity in seven days to make detention decisions. It is unclear, then, how the Plaintiffs are being concretely harmed—much less, irreparably harmed—by the Parole Commission's detention decisions.

The Plaintiffs cite *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110 (D.D.C. 2018) for the proposition that unlawful prolonged detention is per se irreparable harm. *See* PI Mot. at 16. But that case is readily distinguishable. In *Aracely*, asylum seekers alleged that they were being unlawfully detained while their asylum petitions were evaluated. 319 F. Supp. 3d at 120. Specifically, they alleged that the Department of Homeland Security (DHS) had detained them based on an unwritten and unconstitutional policy that took "immigration deterrence" into account "when making parole determinations." *Id.* at 120, 157. The court found that the plaintiffs were likely to show that DHS's unlawful policy "played a significant role in the repeated denials of [their] parole requests," and that they were thus entitled to "proper parole determinations" that would provide them "an avenue through which to secure their liberty." *Id.* at 149, 156.

Here, by contrast, the Plaintiffs do not assert that the Parole Commission relied on unlawful considerations when determining that they should be detained. While the Plaintiffs are critical of the Commission's apparent willingness to arrest and detain individuals based on "administrative" or "technical violations" of their supervised release, Comp. ¶¶ 15–16, again, they do not assert that they cannot be punished for those violations or that such punishment cannot include incarceration.

It is thus not clear that the Plaintiffs are "endur[ing] purportedly inappropriate detention" like the asylees in *Aracely*. 319 F. Supp. 3d at 155.

The Plaintiffs also point to *American Federation of Teachers v. Bessent*, 765 F. Supp. 3d 482, 504 (D. Md. 2025), to argue that "[u]nauthorized agency action, especially when the government believes its actions are appropriate and therefore unlikely to end, can amount to irreparable harm." Pls.' Suppl. Memo at 21. That case, too, is distinguishable. There, the plaintiffs sought to enjoin various "federal government agencies from disclosing records with their sensitive personal information to government personnel affiliated with the newly established Department of Government Efficiency" (DOGE). *Am. Fed'n of Tchrs.*, 765 F. Supp. 3d at 487. The court found that there was irreparable harm not simply because the agencies were acting without authority, but because the "continuing, unauthorized disclosure of the plaintiffs' sensitive personal information to DOGE" would cause them harm "that money damages cannot rectify." *Id.* at 504. By issuing an injunction, the court could prevent that harm. *Id.* at 505.

Here, as explained above, it is not clear what harm the Plaintiffs' requested injunctive relief would prevent. With or without an injunction and conditional writ, the Plaintiffs will remain subject to their terms of supervised release and may face penalties and incarceration for violating those terms from whichever entity is responsible for overseeing their supervision. The Court does not take lightly the Plaintiffs' allegation that the Commission has no authority to act. But the mere allegation that the Commission has acted without authority does not mean that the Plaintiffs have suffered or will suffer irreparable harm. Were the Commission to order tomorrow, for example, that all individuals on supervised release will have their supervision terms shortened by one year, it might not have authority to issue such an order, but the Plaintiffs would be hard pressed to argue that the order threatens to cause them irreparable harm.

14

The Plaintiffs' second argument does not move the needle for similar reasons. Focusing on the historical severity of the Commission's detention decisions, they suggest that if another entity takes over for the Commission, that entity would impose less severe sanctions. PI Mot. Hr'g Tr. at 49−53 (suggesting that a court would release the named Plaintiffs for violations of the terms of their supervised release because a court chose not to detain them on new charges); *see also* PI Reply at 24 (noting that the "[n]amed Plaintiffs and putative class members are alleged to have committed only technical violations or have been released by a court as to an alleged law violation"); Compl. ¶¶ 16–17 (alleging that "arrests of people on supervision . . . are frequently the result of administrative violations of conditions of release" and that the Commission generally only arrests individuals alleged to have committed criminal conduct when they have already been "released by the court."). But that is nothing more than speculation and conjecture. Nothing in this record permits the Court to conclude that judges or a new parole board would be more lenient in punishing the Plaintiffs' alleged violations or less likely to impose incarceration as a punishment. Indeed, any new supervision authority may well impose the same or even stiffer penalties. In this sense, the Plaintiffs have not established that they will suffer any "certain" or "not theoretical" harm in the absence of their requested injunctive relief.

In sum, the Plaintiffs have not shown that the Commission actions they seek to enjoin have caused or will cause them "great, actual and not theoretical" injuries "of such imminence that there is a clear and present need for equitable relief." *Mexichem*, 787 F.3d at 555 (cleaned up). They thus have not satisfied the high degree of proof required for irreparable harm and are not entitled to a preliminary injunction. *Olu-Cole*, 930 F.3d at 529.

**B.    Balance of Equities and Public Interest**

Given the Plaintiffs' failure to show irreparable harm, the Court's analysis could end here. *Id.* at 529. Nevertheless, the Court feels compelled under these circumstances to address the balance of equities and public interest because they weigh strongly against granting the Plaintiffs' requested relief.

The balance of equities and the public interest "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. When analyzing these factors, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (cleaned up). The court should also "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, (1982)).

Here, the Court finds that the balance of equities and the public interest tip sharply in the Defendants' favor. While it is not clear that the Plaintiffs will suffer irreparable harm in the absence of an injunction, granting the Plaintiffs' requested relief would have an immediate and significant impact on the Parole Commission by preventing it from overseeing the supervision of D.C. Code offenders as it has lawfully done for nearly three decades. The Plaintiffs' requested "conditional writ" would, under the best of circumstances, require the D.C. Superior Court or some newly created entity to make arrangements in under a week to assume supervision responsibility for approximately 1,600 D.C. Code offenders. Under the worst of circumstances—*i.e.*, if the D.C. government does not manage to designate or create an entity to assume supervision responsibility—the writ would cause 70 offenders with supervision violations to be released. And these offenders and the 1,600 others under supervision would suddenly have no entity authorized to hold them accountable for violations of their supervised release conditions.

16

In short, there is no situation in which the Plaintiffs' requested relief would not create significant disruption and uncertainty for the offenders under supervision, the government agencies and personnel involved with that supervision, and the public at large. It would also place extreme, if not wholly impracticable, demands on the D.C. Courts and D.C. Council to rapidly create a workable plan to reassert local control over D.C. offender supervision—something the District has been unable to do for decades and that would ultimately require Congressional action. *See* Mot. for Prelim. Inj. at 15 (citing a 2019 letter from Parole Commission Chairman Patricia Cushwa, which notes that "legislative action" similar to the 1997 Revitalization Act is "necessary to return [D.C. supervision cases] to CSOSA and D.C. Superior Court").

As the Supreme Court has previously noted, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Lab.*, No. 25-cv-339, 2025 WL 1783899, at *10 (D.D.C. June 27, 2025) (collecting authorities supporting that an injunction is a stopgap measure intended to preserve the status quo). Here, entry of a preliminary injunction would seem to do the exact opposite. It would dramatically change the relative positions of the Parties. It would offer only uncertain and potentially ephemeral benefits to the Plaintiffs while at the same time subjecting the Defendants, other governmental entities, and the public, to significant risks and costs. And it would do all of this with the risk that Congress may act any day to end the current government shutdown, remove any uncertainty about the Commission's authority, and affirm that the status quo (in which the Commission continues to oversee D.C. offenders on supervised release) is just as it should be.

Under these circumstances, the balance of equities and the public interest weigh strongly against issuing preliminary relief.

\*        \*        \*

Because the Plaintiffs have failed to show irreparable harm or that the balance of equities and public interest favor relief, the Court declines to evaluate their likelihood of success on the merits of their claims. Given the serious issues at stake, however, the Court intends to move expeditiously to resolve the merits of this dispute and orders the Parties to jointly propose an expedited summary judgment briefing schedule.

## CONCLUSION

For the foregoing reasons, the Court denies the Plaintiffs' Motion for Preliminary Injunction, ECF No. 3.[1] The Court further orders that the Parties meet and confer and jointly file a proposed expedited summary judgment briefing schedule by November 6, 2025, for the Court's consideration.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   November 3, 2025

---

[1] Because preliminary relief is not warranted, the Court declines at this early stage to rule on the Plaintiffs' Motion for Class Certification. The Parties should explain in their proposed summary judgment briefing schedule whether further briefing on class certification is necessary.

18